# CITY OF READING v. R. H. SAVAGE.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 2, 1888—Decided April 30, 1888.

1. When the provisions of an act regulating the affairs of cities are compulsorily binding upon every city of the particular classification, the legislation is general and constitutional; but, when they are binding at the option of the local authorities, the legislation is special, local and unconstitutional.

2. The provisions of § 57, act of May 23, 1874, P. L. 269, making the act applicable to such cities of the third class, or any city of less than ten thousand inhabitants, theretofore incorporated, as may accept its provisions, are within the prohibitions of article 3, § VII., of the constitution, and are therefore void.

3. Wherefore, cities of the third class, incorporated prior to said act but re-incorporated under the provisions of said section, acquire none of the powers conferred by § 20, clause 32, or § 37, of said act, respecting the assessment and collection from abutting owners of the expenses of grading streets and alleys.

4. The provisions of § 2, article XXIII., act of May 24, 1887, P. L. 261, validating assessments made within five years preceding the date thereof, in cities of the fourth, fifth, sixth and seventh classes, are ineffective upon assessments made for street improvements by cities re-incorporated under § 57, act of May 23, 1874.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 295 January Term 1888, Sup. Ct.; court below, No. 11 October Term 1886, C. P.

On January 25, 1886, to No. 21 January Term 1886, a municipal claim for lien was filed by the city of Reading against R. H. Savage, owner or reputed owner of a lot fronting on Thirteenth street, for $62.86, expenses of grading said street, " claimed as a lien against the premises above described, and the owner or owners thereof, according to the true intent of ' An act dividing the cities of this state into three classes, and for other purposes,' approved May 23, 1874, and accepted by the councils of said city on June 29, 1874, and the supplements thereto, and an ordinance duly passed by the councils

of the city, approved July 16, 1885, by the mayor." On September 18, 1886, to No. 11 October Term 1886, a scire facias upon said lien was issued by the city solicitor, and on October 27th an affidavit of defence was filed.

On December 27, 1886, the defendant filed a petition which after setting forth the foregoing facts averred:

That said lien was filed as aforesaid and entered of record in said office and the said scire facias issued thereon, under and by virtue of the provisions of § 37 of an act entitled "An act dividing the cities of this state into three classes" and for other purposes, approved May 23, 1874, and accepted by the said city of Reading prior to the date of said grading, to wit, on June 29, 1874; that your petitioner is informed and so avers, that the said act of May 23, 1874, is unconstitutional and wholly void, and confers, or conferred, no authority upon the said city or its solicitor, in the premises, to do the acts above specified, or any of them; and that the lien filed as aforesaid and all the proceedings thereon, under said act, or the supplements thereto, as aforesaid, are wholly void. Wherefore, your petitioner prays your honorable court to strike off the said lien from the record and to quash the said writ of scire facias issued thereon and all the proceedings taken thereupon, at the costs of the said plaintiff therein, and to make such other order and decree in the premises as justice and equity may demand, and that all further proceedings therein are stayed. And he will ever pray, etc.

To the rule granted on the said petition, on January 10, 1887, the city solicitor on behalf of the plaintiff answered:

That the city of Reading, by ordinance of her councils of June 29, 1874, approved by the mayor, July 1, 1874, accepted the provisions of the act of May 23, 1874, under and in accordance with § 57, P. L. 269, of said act, and was duly chartered as a third-class city on August 4, 1874, said charter being recorded in the recorder's office at Reading in Charter Book No. 2, page 413. That the said city of Reading, on October 13, 1877, passed a general ordinance, in accordance with the corporate powers vested in her by said act of assembly, under § 20, clause 32, P. L. 242, entitled "An ordinance providing for the assessment of costs, expenses and damages by reason of the grading, paving and macadamizing of avenues, streets

and alleys of the city of Reading, upon the property owners bounding and abutting thereon." The passage of the above general ordinance conferred upon the city of Reading the power of assessing the cost and expense of grading streets upon the owners of property along the avenues, streets and alleys sought to be thus improved. On July 16, 1885, the said city of Reading passed an ordinance authorizing the grading of Thirteenth street, between Spruce and Cotton streets, in accordance with an act of assembly, approved May 23, 1874, and the ordinance of councils, approved October 13, 1877, and to make an appropriation to pay for the same. By virtue of the last entitled ordinance, founded upon the general ordinance hereinbefore referred to, and passed in conformity with the act of May 23, 1874, the city of Reading graded said Thirteenth street and assessed, according to the per foot-front rule, the cost thereof upon the property along which the grading took place; and the petitioner, Robert H. Savage, refusing to pay, upon proper notice had in the premises, the city of Reading, by her solicitor, on January 25, 1886, entered a lien in the office of the prothonotary of said county of Berks, to No. 21 January T. 1886, for the sum of $62.86 against certain real estate belonging to said Robert H. Savage, in accordance with the power and authority conferred upon her by § 37 of the act of 1874, P. L. 250. That the city of Reading, on September 18, 1886, by her solicitor, sued out a writ of scire facias upon the said claim to No. 11 October Term, 1886.

That your petitioner now asks this court to strike off said lien, in that the said act is unconstitutional and void. Your respondent, the city of Reading, denies this and avows that the act of May 23, 1874, is entirely constitutional and valid and confers upon the said city of Reading full authority to do the acts above specified, and that the lien filed as aforesaid, and all acts and proceedings thereon had, under said act, are entirely valid and your said respondent should be allowed to proceed therein without any hindrance or delay. The city of Reading, respondent, therefore prays, etc.

At the hearing on said petition and answer, it appeared that the city of Reading was formerly under the act of April 26, 1864, P. L. 583, under the provisions of which it was without

power to collect from abutting property owners the expenses of grading avenues, streets and alleys. By ordinance of councils of June 29, 1874, approved by the mayor, July 1, 1874, the city became on August 4, 1874, a city of the third class under the provisions of § 57, act of May 23, 1874, P. L. 269, which section in part thereof provides:

Any city of the third class, or any city of less population than ten thousand inhabitants, heretofore incorporated, may become subject to the provisions of this act, governing such cities of the third class to be hereafter incorporated; and the mayor and councils of such city may effect the same by an ordinance thereof, duly passed by a majority of the members elected to each branch thereof voting in favor of the same; and a certified copy of such ordinance, approved by the mayor and duly certified, accompanied by a statement of the vote thereon, with the names of the members voting for and against said ordinance, shall be forwarded to and filed in the office of the secretary of this commonwealth, and when so filed the governor shall, under the great seal of the commonwealth, certify the surrender of the former charter and the acceptance of the provisions of this act by such city; which certificate shall be recorded among the minutes of councils, and in the office for the recording of deeds in the proper county.

The act of May 1, 1876, P. L. 94, prescribed the manner in which the councils of cities other than of the first class might pass ordinances authorizing the grading or paving of avenues, streets or alleys, and the construction of sewers and bridges.

Section 2, article XXIII., act of May 24, 1887, P. L. 261, " dividing cities of this state into seven classes," etc., provides:

All taxes levied or assessments made in any of said cities of the fourth, fifth, sixth or seventh classes, within five years next preceding the date of the approval of this act, are hereby made valid, and said cities are hereby authorized and empowered to collect the same in the manner provided by this act for the collection of taxes and assessments.

Under this last act, the city of Reading is a city of the fifth class.

Opinion of Court below.

On January 17, 1888, the court, ERMENTROUT, J., filed the following opinion and decree :

The city of Reading was incorporated previous to the passage of the new constitution. In conformity with § 57 of the act of May 23, 1874, P. L., 269, it accepted the provisions of said act, August 4, 1874. On January 25, 1886, a municipal lien, for an assessment laid for grading a street, was filed against real estate owned by the defendant, and on September 18, 1886, a scire facias was issued for its collection. The said act of 1874 provides that "the corporate powers and the number, character, powers and duties of the officers of cities of the first and second classes and those of the third class, now in existence by virtue of the laws of this commonwealth, shall be and remain as now provided by law, except where otherwise provided by this act." It is admitted, however, that previous to this act there was no authority for such an assessment and lien. The constitutionality of said § 57 of the act is assailed by defendant, who asks that the lien be stricken from the record and the proceedings thereunder quashed.

Whatever doubts may have been entertained upon this subject, we feel constrained to say, are settled by the Appeal of Scranton School District, 113 Pa. 176, and we hold that the 57th section comes within the constitutional prohibition of special legislation "regulating the affairs of counties, cities, townships, wards, boroughs or school districts." We see no difference in principle between this and the section of the act of March 18, 1875, P. L. 15, declared unconstitutional in the above cited case. Whether the law shall apply is optional in both cases, and the prohibition and restriction of its provisions equally strong in both, without proper acceptance by councils. The criterion as to constitutionality seems clear and plain. The classification of cities under the act of 1874 was held constitutional because of its generality. The rule laid down applied to every case. There were no exceptions. Wherever the provisions of an act are compulsorily binding upon every city of the particular classification, the legislation is general and constitutional. Wherever the provisions are binding at the option of the local authorities, the legislation is special, local and unconstitutional. It is the compulsorily binding character of the law upon all alike in the classification, that

gives it constitutional life. As was said in Scranton Sch. Dist.'s Appeal: "Whether the methods prescribed by the act shall be the law will depend, not upon the terms of the legislation, but upon the will of others who are not lawmakers at all, and what may be the law in one city of the third class may not be the law in another city of the same class. The practical result is the same. The law will be limited to the one or more cities that do accept, and that makes it local. If local results either are or may be produced by a piece of legislation, it offends against the provisions of the constitution and is void." With this section held unconstitutional the councils of the city acquired none of the powers conferred by § 20 of the act, clause 32, or § 37. For, power and authority to grade, assess and lien are given only to "the said cities of the third class coming under the provisions of this act." Everywhere it is apparent that only the city thus coming under the act by acceptance under § 57, or by special charter under §§ 14–18, are contemplated by the act. This legislative intention is expressly shown by a reading of §§ 35, 39, 40, 56, 58 and 59 of the act, wherein reference is made to such acceptance or charter.

But it is contended that the lien, assessment and scire facias are made valid by § 2, article XXIII., act of May 24, 1887, P. L. 261, dividing cities into seven classes. This section reads : " All taxes levied or assessments made in any of said cities of the fourth, fifth, sixth or seventh classes, within five years next preceding the date of the approval of this act, are hereby made valid, and said cities are hereby authorized and empowered to collect the same in the manner provided by this act for the collection of taxes and assessments." Whilst true it is that, as early as Hepburn v. Curts, 7 W. 300, and Schenley v. Allegheny, 36 Pa. 57, it has been held " the legislature may pass retrospective laws such as in their operation may affect suits pending, and give a party a remedy he did not possess, modify an existing remedy, or remove an impediment in the way of legal proceedings," the important qualification was nevertheless attached that such laws must not violate any constitutional prohibition. The general assembly cannot by an enabling act indirectly make that constitutional which directly is prohibited as unconstitutional. Such legislation is

just as obnoxious as the original act. This very point has also been decided in other states. In Iowa it was held that the legislature cannot validate void special legislation : Stange v. Dubuque, 62 Ia. 303 ; and in Wisconsin it was held that a legislature cannot give validity, by ratification or curative law, to past defective proceedings by officers or municipalities. If it has not the power to authorize such proceedings directly, its power to ratify is subject to whatever limits describe its power to grant authority, and, therefore, after a constitutional amendment has forbidden it to pass a special law for the collection of taxes, it cannot cure defective proceedings under a previous special law : Kimball v. Rosendale, 42 Wis. 407. To the same effect is Cain v. Goda, 84 Ind. 209.

The prayer of the petitioner defendant is therefore granted and the rule to strike off the lien, quash the writ of scire facias and all proceedings therein, is made absolute.

Thereupon the city plaintiff took this writ assigning that the court erred :

1. The court erred in holding and deciding that the act of May 23, 1874, by reason of the provisions of § 57 of said act, was special legislation, thus bringing it within the prohibition of the constitution regulating the affairs of cities.

2. The court erred in holding and deciding that the legislature, when it passed the act of May 24, 1887, did not in § 2, of article XXIII. of said act, validate and make good the assessment in question.

3. The court erred in granting the prayer of the petitioner defendant and in making absolute the rule to strike off the lien, quash the writ of scire facias and all proceedings therein.

*Mr. William J. Rourke, City Solicitor*, for the plaintiff in error :

1. The act of 1874, when approved, became a perfect law. It is not an invitation, needs no ratification, is not a delegation of legislative power, and lacks none of the qualities of command and prohibition essential to every law. It is a general law, because there is no city of the third class in the state perpetually excluded from its operation. The classification of cities according to their population is constitutional, even

though there might be but one city in each class, provided that the act of classification would include those that might come into existence in the future : Wheeler v. Philadelphia, 77 Pa. 338 ; Kilgore v. Magee, 85 Pa. 401.

2. Scranton School Dist.'s App., 113 Pa. 176, holding that the option clause in § 5, act of March 18, 1875, P. L. 15, rendered the legislation special or local and was therefore unconstitutional, was decided in 1886 ; but Kneeland v. Pittsburgh, 10 Cent. R. 421, decided in 1887, held that the act of June 10, 1881, P. L. 109, was entirely constitutional, and that the city of Pittsburgh, which had by ordinance accepted the provisions of said act, could collect a pedler's license from the defendant. This decision, to some extent we take it, overrules Scranton Sch. Dist.'s App. The act of March 18, 1875, could only become a law in such cities as accepted its provisions, and did not perpetually exclude any city of the same class in the state from coming within its operation. The act of June 10, 1881, perpetually excluded cities of the first class from its operation, and could only become applicable in such cities of the second and third classes as accepted its provisions in conformity with § 3 of the act itself. We consider Kneeland v. Pittsburgh, supra, exactly in point and as sustaining the constitutionality of § 57, act of May 23, 1874.

3. In view of this conflict of the decisions, recourse must be had to the general principles touching the power of the legislature and the presumption in favor of the constitutionality of enactments, to which courts are bound to resort in every case where the unconstitutionality is not palpable and clear. Every reasonable doubt should be resolved in favor of the constitutionality of the section: Craigh v. First Presb. Church, 88 Pa. 42 ; Commonwealth v. Smith, 4 Binn. 117 ; Sharpless v. The Mayor, 21 Pa. 164 ; Erie etc. R. Co. v. Casey, 26 Pa. 287 ; Durach's App., 62 Pa. 495 ; Hilbish v. Catherman, 64 Pa. 154; Penn. R. Co. v. Riblet, 66 Pa. 164; Arrott Street, 18 W. N. 122.

4. If § 57 of the act should be pronounced unconstitutional, it would not necessarily follow that the whole act, outside of the matter of the classification of cities already passed upon, would fall. The act would still unquestionably be a general law applicable to all cities of the third class in the state, save

as to those provisions of prior charters unaffected by it. An inapplicable proviso must be set aside, rather than that the body of the text should be rejected and the object of the enactment fall. But where is the line to be drawn? Part of the act has already been sustained, and are not the powers enumerated under § 20 general in their provisions?

5. But let us suppose that § 57, of the act of 1874, offends against the constitution, would not the special tax or assessment levied in this case be validated by § 2, article XXIII., act of May 24, 1887, P. L. 261? We so contend. The legislature, when it inserted said section in the act of 1887, was exercising simply a legislative function, and courts cannot interfere therewith or revise such exercise except when clearly warranted by the constitution. Every man holds his property subject to the taxing power of the state which the constitution has vested exclusively in the legislature: Hewitt's App., 88 Pa. 55; Sharpless v. The Mayor, 21 Pa. 147; Speer v. Blairsville, 50 Pa. 150. The public has the right to demand that a lot owner shall contribute to pay for a public work which has benefited his property, and wherever there is a right, though imperfect, the constitution does not prohibit the legislature from giving a remedy. And when the legislature had the antecedent power to levy a tax, it may by a retroactive law cure any irregularity or want of authority in the person levying the same: Hewitt's App., 88 Pa. 55; Schenley v. Commonwealth, 36 Pa. 29; Hepburn v. Curts, 7 W. 300; Thomas v. Leland, 24 Wend. 65; Satterlee v. Matthewson, 16 S. & R. 179; Hinckle v. Riffert, 6 Pa. 196; Waters v. Bates, 44 Pa. 473; Kelly v. Pittsburgh, 85 Pa. 170; Erie City v. Reed, 113 Pa. 468.

*Mr. G. A. Endlich* (with him *Mr. Daniel Ermentrout* and *Mr. C. H. Ruhl*), for the defendant in error:

1. Article III., § 7, of the constitution, declares that " The general assembly shall not pass any local or special law authorizing the creation, extension or impairing of liens; regulating the affairs of counties, cities, townships, wards, boroughs or school districts; regulating the practice or jurisdiction of, or changing the rules of evidence, in any judicial proceeding or inquiry before courts, . . . . . or providing or changing meth-

ods for the collection of debts." . . . . . Article IX., § 1, declares that "All taxes shall be . . . . . levied and collected under general laws."

The act of May 23, 1874, offends against all of these provisions.

*a.* It is an act intended to regulate the affairs of those cities to which it is applicable. The extreme breadth of significance given by this court to the word "affairs," in Morrison v. Bachert, 112 Pa. 322, 329, can leave no doubt upon this proposition.

*b.* In § 20, clause 32, the act of 1874 is a taxing act. Whatever may, in other states, be the understanding as to the nature of municipal assessments for the improvement of streets, etc., the decision of this court in Olive Cemetery Co. v. Philadelphia, 93 Pa. 129, declares them to be a species of local taxation.

*c.* In § 36, the act is one for the creation of liens, just as the act of June 27, 1883, adjudged unconstitutional by this court in Philadelphia v. Pepper, 6 Cent. R. 419, was an act for the extension of liens. No rule of law, outside of this section, can be alleged that would give the assessments made under § 20 of the act the force of liens upon the real estate, as well as of charges against the individual owning the same. The claim filed by the plaintiff itself recites the act of 1874 as its basis.

*d.* In § 37, it is an act regulating the practice and jurisdiction, and changing the rules of evidence in certain judicial proceedings, and providing for and changing the method for the collection of debts: Strive v. Foltz, 113 Pa. 349.

*e.* In all of these particulars, by reason of the manifest purpose and the unquestioned effect of § 57 to prevent the act from being one of general application and to restrict its operation to such particular cities as may see fit to accept its provisions, it is not a general but a special and local law, and therefore unconstitutional: Scranton Sch. Dist.'s App., 113 Pa. 176.

2. But it is urged that the option clause of § 57, may be unconstitutional and yet the act itself be sustained; indeed, that, if that clause is of no effect, the act must then be construed a general law, universally obligatory from its date. If this were the effect of clauses of this kind, Scranton Sch. Dist.'s App., was a most illogical blunder. No doubt, when the objection goes to the unconstitutionality of a detached or detachable portion of an act, either because of its own charac-

ter, or because of a failure of a title to give notice of it, such provision may be void and yet the remainder of the act stand: Cooley, Const. Lim., 177*, 178*; Dewhurst v. Allegheny, 95 Pa. 437; Wynkoop v. Cooch, 89 Pa. 450; Lea v. Bumm, 83 Pa. 237; Allegheny Co. Home's App., 77 Pa. 77; Dorsey's App., 72 Pa. 192. But that principle can have no application where "all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other: Cooley, Const. Lim., 178*; citing Commonwealth v. Hitchings, 5 Gray 482.

3. Section 2, article XXIII., act of May 24, 1887, P. L. 261, cannot be held to have validated, not only the assessment against the defendant, but the lien entered thereon and every step in the proceedings by scire facias. Validating acts, when retroactive are not to be extended beyond the plain intent of the legislature : Journeay v. Gibson, 56 Pa. 57 ; Reis v. Graff, 57 Cal. 86 ; People v. McCain, 57 Cal. 360. The plain language of the section referred to certainly does not go beyond the assessment. Possibly the legislature meant to validate the lien and the proceedings upon the scire facias, as well as the assessment, but it has not done so, and " it is not for courts of justice to provide for all the defects or mischiefs of imperfect legislation :" Smith v. Rues, 2 Sumn. 354.

4. But could the legislature pass any valid act legalizing assessments made under authority of a statute unconstitutional because special and local? "The healing statute," says Judge Cooley, " must in all cases be confined to validating acts which the legislature might previously have authorized. It cannot make good retrospectively acts or contracts which it had and. could have no power to permit or sanction in advance : Cooley, Const. Lim., 381*; Kimball v. Rosendale, 42 Wis. 407 ; Maxwell v. Goetschius, 40 N. J. (L.) 483; Grim v. School D., 57 Pa. 333 ; Stange v. Dubuque, 62 Iowa, 303 ; Cain v. Goda, 84 Ind. 209; Richards v. Rote, 68 Pa. 248 ; Halderman v. Young, 197 Pa. 324 ; Norman v. Heist, 5 W. & S. 171 ; Greenough v. Greenough, 11 Pa. 489 ; DeChastellux v. Fairchild, 15 Pa. 18; Menges v. Dentler, 33 Pa. 495; Baggs's App., 43 Pa. 512; Schafer v. Emeu, 54 Pa. 304; Shonk v. Brown, 61 Pa. 320.

PER CURIAM:

For reasons stated by the learned judge of the court below, in his opinion, we affirm this case.

Judgment affirmed.

———————————

## APPEAL OF G. L. HALSEY.
## [ESTATE OF ELI SIEGFRIED.]

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 6, 1888—Decided April 30, 1888.

When the committee of a lunatic, authorized by the court having jurisdiction, makes expenditures for the support of those found by the inquisition to constitute the lunatic's family, he will be protected therein, although the persons receiving the maintenance are not the lawful wife and legitimate children of the lunatic, and such are in esse.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 116 January Term 1888, Sup. Ct.

The final account of Philip F. Stier, as committee of the person and estate of Eli Siegfried, a lunatic, having been filed and exceptions made thereto by G. L. Halsey, the administrator of the lunatic, then deceased, and by Catharine Siegfried, widow, and Albert Siegfried, a son, *Mr. Aaron Goldsmith*, appointed auditor to hear and determine the exceptions and to report distribution, found the following facts:

Eli Siegfried, the deceased lunatic, was declared of unsound mind by an inquisition taken on December 24, 1880, which inquisition further found that Isabella Siegfried, aged 46 years, was the wife, and Alice, aged about 15 years, Clara, aged about 13 years, and Stanley, aged about 7 years, were the children and the heirs and next of kin of the said Eli Siegfried. This inquisition was confirmed by the court on December 27, 1880, and on January 5, 1881, Philip F. Stier was appointed committee of the person and estate of the lunatic.