# Commonwealth v. Gilligan.

*Constitutional law—School districts—Definition of classification—Necessity.*

There is no constitutional objection to the classification of school districts any more than of cities. Both are included in the same clause of the constitution prohibitory of local or special legislation, and there is no argument against classification of one that is not equally forcible against the other.

Classification is the grouping together for the purposes of legislation of communities or public bodies which by reason of similarity of situation, circumstances, requirements and convenience will have their public interests best subserved by similar regulations.

With reference to public matters and legislative usage, necessity means great or urgent public convenience. The necessity for classification is the necessity of escape from the intolerable inconvenience of uniformity of regulations under circumstances and needs essentially different, springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless and detrimental to the others.

*Constitutional law—Local and special legislation.*

Where the legislative intent is not to evade the restrictions of the constitution, the courts are not required to be astute in extending them over cases not really within the evil prohibited, though the form may have the appearance of coming within the literal words of the constitution. In statutes local in form but not in intent violative of the constitution, the courts will look beyond the mere form of the act, and examine its true intent and effect in the light of the purpose of the constitutional restrictions.

*Constitutional law—Classification of school districts—Local and special legislation.*

Classification of school districts in reference to their business affairs has

relation to matters in their nature municipal, and is therefore not unconstitutional, though its basis may be the classification of cities.

*Constitutional law—Local and special legislation—School districts—Cities of the third class—Act of May* 23, 1874, *P. L.* 254, *sec.* 41.

The 41st section of the act of May 23, 1874, and other parts of the act which relate to school districts are not void as local or special legislation on a subject prohibited by section 7 of article 3 of the constitution.

The act is pro tanto a classification of school districts which by the previous law, as well as by its own provisions, were coterminous with cities of the third class.

*Constitutional law—Continued recognition of constitutionality of act.*

The fact that the act of May 23, 1874, has stood on the statute book without challenge for nearly a quarter of a century, and that millions of dollars of school funds have been collected and disbursed under its provisions, while in itself not a reason for refusing to declare the act void if in contravention of the constitution, yet is strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be, to make it the duty of the Supreme Court now to set it aside.

*Constitutional law—Title of act—Cities of the third class—School district —Act of June* 16, 1891, *P. L.* 306.

The act of June 16, 1891, being not only an amendment but a reenactment by a complete, independent and self-sustaining statute, of section 41 of the act of May 23, 1874, the question whether the subject of the latter section is sufficiently indicated in the title to that act, does not arise in this case.

Argued April 11, 1898. Reargued Jan. 24, 1899, and again Jan. 30, 1900. Appeal, No. 240, Jan. T., 1897, by defendants, from judgment of C. P. Luzerne Co., Feb. T., 1897, No. 101, on quo warranto, in case of D. A. Fell, Jr., District Attorney, v. Thomas J. Gilligan et al., School Controllers of the Pittston City School District. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ., on final argument. Reversed.

Quo warranto to determine the title to office of school controllers of the city of Pittston.

From the record it appeared that the board of school controllers of the city of Pittston, consisted of two members from each of the eleven wards of the city, and was elected under section 41 of the Act of May 23, 1874, and the supplemental act of June 16, 1891. The plaintiff claimed that these acts were unconstitutional.

The court entered judgment of ouster.

*Error assigned* was the judgment of the court.

*P. A. O'Boyle* and *David J. Reedy,* with them *E. C. New-comb,* for appellants.—An act defining the territorial limits of a school district is constitutional: Com. v. Reynolds, 137 Pa. 406 ; Darby v. Sharon Hill, 112 Pa. 66 ; In re Greenwood Township, 3 Grant, 261 ; In re School District in Sewickley Township, 33 Pa. 297 ; In re Division Line of Clay, 33 Pa. 366.

The title as amended meets the requirements of the constitution : Art. 3, sec. 3 of the Constitution; Art. 3, sec. 6, Constitution of 1874 ; Cooley's Constitutional Limitations, 172 ; Com. v. Taylor, 159 Pa. 451 ; In re Pottstown Boro., 117 Pa. 538 ; Allegheny County Home's App., 77 Pa. 77 ; Com. v. Green, 58 Pa. 226 ; Yeager v. Weaver, 64 Pa. 425 ; Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1 ; Craig v. First Presbyterian Church, 88 Pa. 42; Smith v. Howell, 60 N. J. Law, 384 ; State v. Corbett, 61 Ark. 226 ; State v. Cincinnati, 40 N. E. Repr. 508.

An act classifying school districts with relation to population for the purpose of electing trustees and providing different methods of election in the different classes is not unconstitutional since the classification is reasonable on all districts : State v. Long, 52 Pac. Repr. 645 ; Trustees of Public Schools v. Sherman, 42 S. W. Repr. 546; State v. Enos, 72 N. W. Repr. 222; State v. Miller, 100 Mo. 439 ; State v. MacKlin, 13 S. W. Repr. 680; State v. Ridgeway, 25 Atl. Repr. 936; People v. West-chester County, 69 Hun, 143; Holmes & Bull Furniture Co. v. Hedges, 13 Wash. 696 ; Landis v. Ashworth, 31 Atl. Repr. 1017.

The Act of May 23, 1874, P. L. 254, has been before this court in all its phases and in many cases and almost every section of the act has been passed upon, including the 41st section, and its constitutionality has been sustained : Com. ex rel. v. Smoulter, 126 Pa. 137, sec. 1; Com. ex rel. v. Fitler, 136 Pa. 129, sec. 4 ; Interstate, etc., Paving Co. v. Philadelphia, 164 Pa. 477, sec. 6 ; Appeal of Wilkes-Barre, 116 Pa. 246, sec. 11 ; Vacation Henry Street, 123 Pa. 346, sec. 13 ; Com. ex rel. v. Macferron, 152 Pa. 244, sec. 13 ; Allentown v. Gross, 132 Pa. 319, sec. 20; Oil City v. Trust Co., 151 Pa. 454, sec. 20 ; Appeal of Allentown, 109 Pa. 75, sec. 33 ; Arnt v. Scranton, 148 Pa. 211, secs. 36,

37, 47; Com. v. Evans, 102 Pa. 396, sec. 41; Scranton School Dist. v. Simpson, 133 Pa. 202, sec. 42; McCauley v. Easton School Dist., 133 Pa. 493, sec. 42; Wilson v. Scranton, 141 Pa. 621, secs. 53, 55; Savage v. Reading, 124 Pa. 328, sec. 57; Wheeler v. Philadelphia, 77 Pa. 338, sec. 57.

An act which is merely declaratory of a former law is constitutional: Bush v. McKeesport, 166 Pa. 57; Forbes Street, 70 Pa. 125; Clearfield Co. v. Cameron Township, 135 Pa. 86.

A designation of the representation in boards of school controllers is not a regulation of the affairs of a school district: State v. Miller, 100 Mo. 439; State v. MacKlin, 13 S. W. Repr. 680; People v. Westchester County, 69 Hun, 143; State v. Enos, 72 N. W. Repr. 222; Com. v. Evans, 102 Pa. 396; Com. v. Taylor, 159 Pa. 451.

Courts will look to the effect of a law in order to influence their construction of it: Reading v. Savage, 124 Pa. 328; Dudley v. Reynolds, 1 Kansas, 270.

When an unconstitutional effect would be the result of a strict or narrow construction, a broad or liberal one is commanded: Com. v. Butler, 99 Pa. 535; Farmers & Mechanics Bank v. Smith, 3 S. & R. 63; Monongahela Nav. Co. v. Coons, 6 W. & S. 101.

*H. W. Palmer* and *I. H. Burns*, with them *M. N. Donnelly* and *James L. Morris*, for appellee.—The act of May 23, 1874, violates in a twofold manner the provisions of section 7 of article 3 of the constitution. 1. The act contains two separate distinct subjects of legislation, viz: (*a*) All cities of the third class. (*b*) All school districts in cities of the third class. 2. The subject of the legislation contained in the act is not clearly expressed in the title.

Section 41 of the act of 1874 and the act of 1891 is local legislation.

Classification may be made for municipal purposes only: Ayars's App., 122 Pa. 266; Frost v. Cherry, 122 Pa. 417; Meadville v. Dickson, 129 Pa. 1; Ruan St., 132 Pa. 257; Chalfant v. Edwards, 173 Pa. 246.

No necessity can be found to justify a classification of school districts and legislation therefor for separate classes: Sugar Notch Borough, 192 Pa. 349.

The words of the title of the act of 1874 give notice of legislation as to cities of the third class not to school districts: Gackenbach v. Lehigh Co., 166 Pa. 448.

What the title to an act must contain is decided in Mt. Joy Boro. v. Lancaster Turnpike, 182 Pa. 581.

OPINION BY MR. JUSTICE MITCHELL, April 30, 1900:

It is conceded that the respondents were duly elected school controllers in accordance with the Act of May 23, 1874, P. L. 254, sec. 41, and that they are properly qualified and entitled to hold the office, if the act is valid. But it is said that the act being one for the classification and regulation of cities of the third class, section 41 and those parts of the act which relate to school districts are void as local or special legislation on a subject prohibited by section 7 of article 3 of the constitution. The learned court below so held.

Section 41 which is in question provides that " each of said cities of the third class shall constitute one school district." There is nothing new or peculiar in this, so far as it makes the district coterminous in territory with the city, for the legislature has always constituted school districts of territory embraced in some of the municipal or political divisions of the state. Thus the Act of May 8, 1854, P. L. 617, sec. 1, which is the foundation of the existing statute law on the general subject, provides that " every township, borough and city . . . . shall constitute a school district." Section 41 then provides that " all the property therein shall be the common property of said district; and the members of the board of school controllers for the time being shall have power to levy and collect taxes and the same rights and powers in relation to real and personal property as is now by law conferred upon the school directors of the several districts of this commonwealth, and they shall govern and manage the public schools in the manner now provided by law for the maintenance of a system of education by common schools ; " but further proceeds to fix the number of school controllers according to the number of wards in the city, and their separate election by the electors of the several wards. These latter provisions apply in terms only to cities of the third class, and herein lies the substance of the objection made.

The most cursory examination of this act discloses that it is

pro tanto a classification of school districts which by the previous law as well as by its own provisions were coterminous with the cities being legislated for. At the date of the act, the constitution was just adopted, and its restrictions on the forms of expression of legislative meaning were not so prominent in the minds of legislators · as they have since become. Hence the necessity for express classification was not specially apparent. But the legislative intent is clear, and there is nothing unconstitutional in it. In Lloyd v. Smith, 176 Pa. 213, it was said that the principle was established "that a law which does not exclude any one from a class, and applies to all the members of the class equally is general. The same principle must make classification constitutional as to the other political and municipal divisions of the state when considered in their governmental capacity. Classification of counties is therefore as permissible as classification of cities, and the legislature may determine what differences in situation circumstances and needs call for a difference in class, subject to the supervision of the courts as the final interpreters of the constitution, to see that it is actual classification, and not special legislation under that guise." And the test in this respect is not wisdom but good faith, in the classification: Seabolt v. Comrs. of Northumberland County, 187 Pa. 318. It has already been held in In re Sugar Notch Borough, 192 Pa. 349, that "there is no constitutional objection to the classification of school districts any more than of cities. Both are included in the same clause of the constitution prohibitory of local or special legislation, and there is no argument against classification of one that is not equally forcible against the other." What is classification? With reference to the present subject it is the grouping together for purposes of legislation of communities or public bodies which by reason of similarity of situation, circumstances, requirements and convenience will have their public interests best subserved by similar regulations.

It is said that classification is only sustained on the ground of necessity. But the necessity spoken of by this court in Wheeler v. Philadelphia, 77 Pa. 338, was the necessity of escape from the intolerable inconvenience of uniformity of regulations under circumstances and needs essentially different. And in general with reference to public matters and legisla-

tive usage, necessity means great or urgent public convenience. Thus viewers under the act of June 13, 1836, are required to examine and report "whether the road desired be necessary for a public or private road," etc. It cannot be contended that anything more is meant than public convenience. And many other illustrations might be given to the same effect. The strictest definition of necessity to be found in the books, by STERRETT, J., in Ayars's Appeal, 122 Pa. 266, 281, is not essentially different: "A necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless and detrimental to the others. . . . They are general laws because they apply alike to all that are similarly situated as to their peculiar necessities."

The classification of school districts intended by the act of 1874 is upon lines of distinction as genuine and as fundamental as its classification of cities themselves. Both cities and school districts exercise functions which are governmental in character, and they necessarily run closely together. The legislature may recognize this fact, and provide for the regulation of the two powers concurrently in the same territory so far as they relate to the same or similar matters, so that the same governmental functions, as for instance the supreme power of arbitrarily taking the citizen's property by taxation, shall be exercised harmoniously over the inhabitants of the same district. An illustration of this principle may be found in the act of 1854, which has worked so well in practice that for nearly half a century it has been the basis of all the statute law on the subject. Section 1 of that act, as already quoted, provides that "every township borough and city . . . . shall constitute and be a school district, subject to the provisions of this act, but any borough which is or may be connected with a township in the assessment of county rates and levies shall with the said township form one district."

How far classification in connection with cities might be applied to functions of the school boards strictly educational in character, such as the qualifications of pupils or teachers, the grading of schools, the course of study, etc., we need not now consider. This act does not interfere with any such matters

but leaves them all unchanged as before in the hands of the governing bodies. The act deals with business affairs which though relating to schools are in their nature municipal and provides a similar system for those similarly situated. It does not make the school boards parts of the municipal government, they are left as independent as they were before. But recognizing that a large population compressed into a small territory may have the same necessity for a somewhat differently constituted board of government for the business affairs of its schools, that it has for its strictly municipal affairs, it provides a special system for districts so specially situated. This is the legitimate office of classification, and therefore is not local or special within the prohibition of the constitution. The act of 1874 in its main features affecting school districts is in entire harmony with the act of 1854 and the general laws on the subject of schools. Whether the variations as to the boards of direction or control in cities of the third class (cities of the first and second classes having already their own peculiar systems) are wise is a legislative not a judicial question. The act has stood on the statute book, without challenge for nearly a quarter of a century, and millions of dollars of school funds have been collected and disbursed under its provisions. While these are not reasons for refusing to declare it void if in contravention of the constitution, yet they are strongly persuasive that the act is not so clearly unconstitutional as it should be shown to be to make it our duty now to set it aside : In re Sugar Notch Borough, 192 Pa. 349, 358.

Objection is also made to the act on the ground that its title gives no indication of its contents in regard to school districts. The case was argued and treated both in the court below and here, as resting on the act of 1874, and for convenience has been so considered up to this point. But with reference to this second objection it is important to remember that the act upon which the case rests is the Act of June 16, 1891, P. L. 306. It is true that it is as it purports to be, an amendment of section 41 of the act of 1874, but it is a substantial re-enactment with some changes, and is a complete, independent and self-sustaining statute, and its title, An Act to amend the 41st section, etc. "in respect to the representation in boards of school controllers," etc., gives explicit notice of the subject intended to be legislated upon.

Counsel for appellant have referred us to several decisions in other states upon substantially similar constitutional provisions, and they appear to be in entire harmony with our views herein expressed, but it is not necessary to do more than refer to them in this general manner.

In deference to the importance of the question and the elaborate opinion of the court below, the writer has carefully reread and compared all of the numerous decisions of this court on the restrictions contained in article 3 of the constitution. Our present views are not in conflict with anything that was decided in any of them, though occasional expressions are to be met with that indicate some uncertainty and perhaps even some variation in the views of the writers of the opinions. This was to be expected. The constitution of 1873 was a new departure in the history of the law. Instead of being confined, in accordance with the traditions of American institutions, to the framework of the government as composed of general and fundamental principles, it was converted into a binding code of particulars and details which had previously been left to the province of ordinary legislation. And the ruling motive with which we are now specially concerned was profound distrust of the legislature. As pointed out by our Brother DEAN in Perkins v. Philadelphia, 156 Pa. 554, article 3 contains sixty specific prohibitions of legislation besides other restrictions and regulations not absolutely prohibitory. Through these the pathway for honest and desirable and necessary laws even yet is not always clear, and it was inevitable that there should be some uncertainty and even divergence in the views of judges thus forced to enter on an untrodden and difficult field. But as already said there is no conflict between what we now hold and anything we have heretofore decided. And the only case which is in apparent opposition is Chalfant v. Edwards, 173 Pa. 246. That case was rightly decided on its facts, as was shown in In re Sugar Notch Borough, 192 Pa. 349, 357, but much of what our late Brother WILLIAMS said in the opinion was by way of historical review of the public school system, rather than of discussion of constitutional powers, and the authority of the case must be strictly limited to what it decided. So limited it is in line with all our cases on the subject including the present.

The evil at which the prohibitions of article 3 were directed was the interference of the legislature with local affairs without consulting the localities and the granting of special privileges or exemptions to individuals or favored localities. It was said by STERRETT, J., in Ayars's Appeal, 122 Pa. 266, that "during the session of the legislature immediately preceding the adoption of the present constitution nearly one hundred and fifty local or special laws were enacted for the city of Philadelphia, more than one third that number for the city of Pittsburg, and for other municipal divisions of the state about the same proportion. This was by no means exceptional." A cursory examination of the pamphlet laws of 1873 shows that no less than thirty-one of these local laws relating to Philadelphia were acts over the heads of councils and the courts directing the opening, paving or vacating of particular streets by name. This is a fair specimen of the kind of local and special legislation that was the real evil to be corrected, but owing to the breadth of the language used, perhaps, somewhat due to the wrathful zeal with which the convention attacked the subject, the courts have had a difficult task to enforce the constitutional restrictions fully, even " sternly " as was said in Morrison v. Bachert, 112 Pa. 322, without carrying them far beyond the real evil intended to be remedied, and making them a chain of fetters on the just requirements of special communities and localities. In a forcible but very temperately worded report by the Committee on Local and Special Legislation, to the State Bar Association in July, 1899, it is very justly said: "It is neither safe nor fair to set down the continual efforts to escape the constitutional prohibition, to the perversity of the people or the wilfulness of the legislature. On the contrary they demonstrate the deep-seated and general discontent upon the part of the municipalities of the state with the restrictions imposed by the constitution:" 5 Annual Rep. of Penn. Bar Assn. 137.

Undoubtedly many acts have been passed whose framers intended to evade the constitutional prohibitions. These the courts have always unhesitatingly struck down, and may safely be relied on to continue to do so. But where the legislative intent is not to evade the restrictions the courts are not required to be astute in extending them over cases not really within the evil prohibited though the form may have the appearance of

coming within the literal words of the constitution. A very signal illustration of this principle is found in City of Reading v. Savage, 120 Pa. 198. The Act of May 23, 1874, P. L. 269, sec. 57, authorized cities of the third class by ordinance of councils to accept the act, and thereby acquire the powers of a city incorporated under the act. The city of Reading having passed such an ordinance, filed a municipal lien for grading, etc., and its authority being disputed the court below held that section of the act unconstitutional on the ground that the act was not binding on all cities of the class, saying " it is the compulsorily binding character of the law upon all alike in the classification that gives it constitutional life." On appeal this was affirmed per curiam. That section of the act was local in form as it did not apply to all cities of the class, and the court took this view. Doubt having arisen, however, the court ordered a reargument and reversed its first ruling on the ground that the act of 1874 being a general act for the future incorporation of cities, the provisions of section 57 allowing cities of the third class already existing, to come into the general class, did not in any way make the act local or special, the present chief justice saying, cities " that do not embrace the opportunity simply remain as they were before, and all that do embrace it become members of a class . . . . regulated by general law. There is no possibility of any exercise of the powers or privileges conferred by section 57 which can work affirmatively a local or special result. Whatever is done by virtue of this section simply converts that which was or might be local or special, into that which is general:" City of Reading v. Savage, 124 Pa. 328, 336. Other illustrations will be found in Evans v. Phillipi, 117 Pa. 226, Road in Cheltenham, 140 Pa. 136, and Bennet v. Norton, 171 Pa. 221, particularly the remarks of RICE, P. J., on statutes local in form but not in intent violative of the constitution, pp. 236, 237.

It may, therefore, be taken as settled law that in cases of this character the courts will look beyond the mere form of the act, and examine its true intent and effect, in the light of the purpose of the constitutional restrictions.

Judgment reversed and judgment entered for defendants (appellants) with costs.