## Meisel *v.* O'Neil, Appellant.

*Elections — Public officers—Municipalities—Mayor of Pittsburg — Constitutional amendments of 1909—Schedule.*

The schedule to the constitutional amendments of 1909, which was adopted to bridge the channel between the old and new systems of government, applies to the terms of existing officers as well as future officers, and under its provisions the term of office of the mayor of the city of Pittsburg who was elected in November, 1909, for a term of three years, was extended for one year, thereby rendering unnecessary a primary election for candidates for that office in September, 1911, and an election for the office in November, 1911.

Argued Oct. 5, 1911.   Appeal, No. 212, Oct. T., 1911, by defendants, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1911, No. 703, on bill in equity in case of Jacob J. Meisel et al. v. J. Denny O'Neil, I. K. Campbell and S. J. Toole, County Commissioners of Allegheny County. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity for an injunction.
The opinion of the Supreme Court states the case.

*Error assigned* was decree awarding injunction.

*John P. Hunter,* with him *Walter Lyon, A. B. Hay, E. B. Vaill, J. Garfield Houston* and *Ward Bonsall,* for

appellants.—The schedule is not part of the constitution, but is only an auxiliary to it for the purpose of carrying its provisions into effect bridging the chasm between it and the old, and cannot be interpreted to supplant it: Commonwealth v. Clark, 7 W. & S. 127; Elton v. Geissert, 10 Phila. 330; Commonwealth v. Hartranft, 77 Pa. 154; Commonwealth v. Kilgore, 82 Pa. 396.

A schedule is not to be construed so as to extend it beyond the fair language used in it: Commonwealth v. Kilgore, 82 Pa. 396.

The courts will so construe the law as to shorten the term of a public officer rather than to lengthen it: Commonwealth v. McCarthy, 3 W. N. C. 477.

The second paragraph of the schedule was introduced ex cautela: Portuondo's Estate, 191 Pa. 28; Jones v. Tatham, 20 Pa. 398; Commonwealth v. Charity Hospital, 199 Pa. 119.

The court will not give a proviso such an effect as to enlarge the scope of the enacting clause, or use the proviso as an enacting clause itself. Jones v. Tatham, 20 Pa. 398; Commonwealth v. Charity Hospital, 199 Pa. 119; Collner's Estate, 22 Pa. C. C. Rep. 198.

*William A. Stone*, with him *Stephen Stone*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, October 9, 1911:

This was a bill filed by certain taxpayers of the city of Pittsburg, Allegheny county, to restrain the defendants, the county commissioners, from printing the names of candidates for mayor of the city on the ballots for the primary election to be held on September 30, 1911, on the ground that no election was to be held for the office of mayor of the city of Pittsburg in November, 1911. The court below sustained the plaintiff's contention, and granted the injunction prayed for. The defendants have taken this appeal. If there is no election to be held in November of this year for mayor of the city of Pittsburg, it necessarily follows that no nomination for the office

should be made at the primary election, and that the learned court below was right in restraining the county commissioners from printing the names of candidates for the office on ballots to be voted at the election in September, 1911.

The present mayor of the city of Pittsburg was elected at the February election in 1909 for a term of three years expiring in April, 1912. Under the constitution and laws in force at the time of his election, his successor would be elected in February, 1912, and his term of office would begin in the following April. But in November, 1909, certain amendments to the constitution of the commonwealth were adopted, by one of which the February election was abolished, and it was provided that all municipal elections should take place in November of the odd-numbered years, thereby requiring such elections to be held every two years. To avoid the confusion and inconvenience necessarily arising from the changes made by the amendments, and especially in the case of officers elected for an odd number of years, a schedule to the amendments was adopted to carry them into effect. The schedule provides, inter alia, as follows:

"In the case of officers elected by the people, all terms of office fixed by act of assembly at an odd number of years shall each be lengthened one year, but the legislature may change the length of the term, provided the terms for which such officers are elected shall always be for an even number of years.

"The above extension of official terms shall not affect officers elected at the general election of 1908; nor any city, ward, borough, township or election division officers, whose terms of office, under existing law, end in the year 1910."

It is also directed in the schedule that after 1910 and until the legislature shall otherwise provide, all terms of city, ward, borough, township, and election division officers shall begin on the first Monday of December in odd-numbered years; that such officers holding office at the date

of the approval of the amendments whose terms might end in 1911, shall continue to hold their offices until the first Monday of December of that year.

Do the provisions of the schedule extend the term of the present mayor of the city of Pittsburg, thereby preventing an election of his successor at the November election of this year? We are all of the opinion that such is the effect of the schedule to the amendments adopted in 1909. The contention of the defendants is that the schedule acts prospectively and does not apply to the terms of officers who were in office at the date of the adoption of the amendments. But this view entirely overlooks the purpose of the schedule to the constitution, which is to bridge the chasm between the old and the new systems of government, and to eliminate any conflicts between the two systems. The changes made by the amendments of 1909 in the terms of some of the officers and in the dates of holding the elections necessarily resulted in overlapping and conflict in the terms of certain officers, and to remedy that condition the schedule was adopted. It must necessarily apply to present conditions, to officers in office at the time of the adoption of the amendments, or it would entirely fail of its purpose. There could be no occasion to apply it after the new system created by the amendments had gone into effect, and officers had been elected and taken their offices pursuant to its provisions. The chasm is then spanned, the new system is in complete operation, and the schedule has served its only purpose which is always temporary.

The language of the schedule removes any doubt that it was intended to apply to officers in office at the date of its adoption. The first paragraph provides, it will be observed, that "in the case of officers elected by the people, all terms of office fixed by act of assembly at an odd number of years shall each be lengthened one year. . . ." Language could not be clearer or more comprehensive. The terms of all elective officers fixed at an odd number of years were extended one year. Does that refer only to the

terms of officers to be thereafter elected, as contended
by the defendants, or does it apply to the terms of exist-
ing officers as well as future officers, so as to harmonize
the two systems and prevent vacancies and other incon-
veniences? If there is any doubt as to the correct solution
of the question, it is settled by the provisions of the second
paragraph of the schedule above quoted. The first para-
graph having extended the terms of all officers elected for
an odd number of years, it is then provided that "the
above extension of official terms shall not affect officers
elected at the general election of 1908; nor any city, . . . .
officers, whose terms of office, under existing law, end in
the year 1910." If the provision extending the term did
not apply to officers then in commission, why follow it
immediately with the clause providing that it should
not apply to certain officers theretofore elected at the
general and municipal elections and at that time in office?
There was no necessity for this exception to the general
provision extending the terms of officers if it was only
intended to be prospective in its operation. It is against
the established rules of construction to hold that the ex-
ception is meaningless, and it cannot be so construed in
the absence of some compelling reason which does not
appear. There is no ground for the contention that it
was introduced into the schedule ex cautela. Again,
if we hold that the provision for the extension of the terms
of officers does not apply to officers in office at the date of
the approval of the amendments, the schedule makes no
provision whatever for officers elected in 1909. If this
was clear from the language of the instrument, it would
be our duty to so construe it regardless of results. It is
our duty to interpret, not to make the constitution.
But here, the language employed in the schedule, inter-
preted by the established rules of construction, leaves no
doubt that the framers of the instrument intended the
provision in question to apply to the terms of existing
officers. That interpretation of the schedule makes it
accomplish a purpose manifestly necessary to the har-

monious and effective working of the old and new systems of government.

We regret that the necessity for a speedy decision and a pressure of other official duties prevent a more elaborate discussion of the important question before us. We entertain no doubt as to the correctness of our conclusion, and what has been briefly said disposes of the controlling question in the case. The other questions discussed by the counsel in their briefs may be decided when raised on the record of a case requiring their decision.

The decree of the court below is affirmed.