# Commonwealth v. Harrison

*Sidney G. Handler*, for Commonwealth.
*Edward Friedman*, for defendant.

HARGEST, P. J., November 22, 1943.—This matter comes before us upon a motion to quash the proceedings and discharge defendant before indictment. This is a proper method by which to raise the legality of the prosecution: Commonwealth v. Lingle, 120 Pa. Superior Ct. 434; Commonwealth v. Brennan, 193 Pa. 567.

From the pleadings it appears that defendant was charged before an alderman of the City of Harrisburg on August 24, 1943, with violation of the election laws. The information avers that he was an election officer of the first precinct of the ninth ward of the City of Harrisburg at the primary held September 9, 1941, and wilfully violated the law in several particulars set out in said information. Defendant waived a hearing and gave bail for court. Thereupon the motion to quash the proceedings was presented, on the ground that the matter had not been presented to a grand jury, and could not be so presented until after the expiration of two years from the commission of the alleged offenses. The first day of the September quarter sessions of this court was held September 20, 1943.

The answer to the motion to quash averred that Robert Harrison was elected judge of election on November 7, 1939, and that he served from January 1, 1940, to December 31, 1941, and that he was reëlected November 4, 1941, and served from January 1, 1942, to the latter part of August 1943, when he resigned.

The question is whether he was serving at the primary September 9, 1941, as a legally-elected official or as a de facto officer and whether he was subject to prosecution on August 24, 1943, and to indictment on September 20, 1943, for an alleged offense committed September 9, 1941.

Section 1 of the Act of April 6, 1939, P. L. 17, 19 PS §211, which amends section 77 of the Criminal Procedure Act of March 31, 1860, P. L. 427, provides, inter alia:

"That indictments for malfeasance, misfeasance, or nonfeasance in office . . . or for any misdemeanor in office . . . committed by any officer or employe of this Commonwealth or of any agency thereof . . . may be brought or exhibited at any time within two years from the time when said public officer or said employe shall have ceased to occupy such office or such employment, but in no event more than six years from the commission of the offense."

Involved in this issue is the constitutionality of section 401 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2671. That section provides, inter alia:

"The judge and inspectors of election of each election district shall be elected by the electors thereof at the municipal election, and shall hold office for a term of two years from the first Monday of January next succeeding their election."

Article VIII, sec. 14, of the Constitution of Pennsylvania provides:

"District election boards shall consist of a judge and two inspectors, who shall be chosen annually by the citizens."

If we could rest the matter here there would be no question that section 401 of the Pennsylvania Election Code would have to be declared unconstitutional; but in 1909 a number of amendments to the Constitution were submitted to the electors, and, together with a schedule, were adopted at the November election of that year.

The purpose of some of these proposed amendments was to provide for a general election in each even-numbered year and a municipal election in each odd-numbered year. This was accomplished by the amend-

ment of sections 2 and 3 of article VIII of the Constitution. At the same time it was proposed to amend section 14 of article VIII, above quoted, so as to read:

"District election boards shall consist of a judge and two inspectors, who shall be chosen biennially by the citizens at the municipal election."

This amendment was not adopted.

It is contended, however, that the schedule which was adopted has the effect of authorizing the passage of section 401 of the Election Code of 1937. The pertinent provision of the schedule is:

"In the case of officers elected by the people, all terms of office fixed by act of Assembly at an odd number of years shall each be lengthened one year, but the Legislature may change the length of the term, provided the terms for which such officers are elected shall always be for an even number of years."

Then follows provision for the extension of terms of municipal officers and judges, including the provision:

". . . all election officers and assessors chosen at that [1910] election, shall serve until the first Monday of December in the year one thousand nine hundred and eleven."

It is contended that the provisions quoted have the effect of authorizing the passage of section 401 of the Pennsylvania Election Code.

We have before us a question of such serious character that it far outweighs the mere question whether this defendant may be prosecuted or not. On the one side we are asked to give effect to a schedule as a permanent part of the fundamental law which ignores the clear provisions of one section of the Constitution, and on the other side we are asked to take the Constitution as it is and consider the schedule as a temporary expedient.

In construing the Constitution, as well as statutes, courts must give a construction to it so that, if possible, various sections shall be construed together to make a

harmonious whole: Weiss v. Ziegler et al., 327 Pa. 100, 104; Long v. Cheltenham Township School Dist., 269 Pa. 472; and we must interpret the words as the people who voted for the Constitution probably understood them: Long v. Cheltenham Township School Dist., supra; City of Harrisburg v. Harrisburg Trust Co., 48 Dauph. 422; American Stores Co. v. Boardman, Secetary of Revenue, 336 Pa. 36, 46 Dauph. 334; Lighton et al. v. Abington Twp. et al., 336 Pa. 345.

There can be no misinterpretation of section 14 of article VIII as it now stands in the Constitution, and election officers, under that section, should be elected annually, unless either a harmonious construction of the whole instrument or reading the schedule together with the Constitution requires a different construction.

Section 2 of article VIII, as amended, specifically provides for a general election to be held each even-numbered year. Section 3 provides that all judges elected by the electors of the State at large may be elected at either general or municipal election, and "All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers, for regular terms of service, shall be held on the municipal election day; . . . Provided, That such elections shall be held in an odd-numbered year."

If election officers were included within the designation of "city, ward, borough, and township officers", we would have an extremely difficult problem, but the Constitution does not so include them. Section 14 of article VIII puts them in a different class, and the Constitution provides that "district election boards shall consist of a judge and two inspectors, who shall be chosen annually by the citizens". The amendment submitted in 1909 provided that they "shall be chosen biennially by the citizens at the municipal election". Both the original Constitution and the amendment to section 14 are perfectly clear. The people refused to adopt the amendment, which let the original stand.

The Act of March 2, 1911, P. L. 8, was intended to carry said amendments "into complete operation", and defined (sec. 6) : "The term 'public officer' as used in this act shall include all officers elected by vote of the people, whether the offices they fill were created by the Constitution or by special or general acts of Assembly."

Apparently it was generally but mistakenly understood that this statute had the effect of providing biennial elections for election officers.

Upon that assumption, Deputy Attorney General Cunningham, in an opinion dated August 21, 1913, In re Compensation of Election Officers, 61 Pitts. 517, without further discussion, said:

"By virtue of the Constitutional amendments of 1909 election officers are to be chosen biennially at municipal elections."

But the serious question before us is whether that assumption, which has apparently been acted upon from that time to the present, is constitutionally justified.

A schedule is generally understood to be a temporary enactment for the purpose of effecting a transition from old governmental provisions to the new, and putting the new ones into effect.

In Commonwealth v. Clark, 7 W. & S. 127 (1844), which concerned the schedule to the Constitution of 1838, Chief Justice Gibson said (p. 133) :

"What is this schedule? It is a temporary provision for the preparatory machinery necessary to put the principles of the amendments in motion without disorder or collision. Its purpose was not to control those principles by the happening of an event, but to carry the whole into effect without break or interval. Its use was merely to shift the machine gradually into another track, and, having done its office, it was to be stowed away in the lumber-room of the government. Nothing was further from the purpose of the convention than to make anything contained in it a matter of perma-

nent regulation. Its uses were temporary and auxiliary."

And in Meisel v. O'Neil, 233 Pa. 213, 216, the court said, with reference to the adoption of the 1909 amendments, and answering the contention that the schedule acts prospectively: ·

"But this view entirely overlooks the purpose of the schedule to the constitution, which is to bridge the chasm between the old and the new systems of government, and to eliminate any conflicts between the two systems. The changes made by the amendments of 1909 in the terms of some of the officers and in the dates of holding the elections necessarily resulted in overlapping and conflict in the terms of certain officers, and to remedy that condition the schedule was adopted. It must necessarily apply to present conditions, to officers in office at the time of the adoption of the amendments, or it would entirely fail of its purpose. There could be no occasion to apply it after the new system created by the amendments had gone into effect, and officers had been elected and taken their offices pursuant to its provisions. The chasm is then spanned, the new system is in complete operation, *and the schedule has served its only purpose which is always temporary.*" (Italics supplied.)

However, a schedule may have a permanent effect. This was held as to section 16 of the schedule adopted with the Constitution of 1874: Commonwealth ex rel. Reeder v. Pattison, 109 Pa. 165. See also State ex rel. Aquamsi Land Co. v. Hostetter (Mo.), 79 S. W. (2d) 463, 465, and 16 C. J. S., Constitutional Law, sec. 11.

We recognize, however, that in order to hold that a provision of the schedule has a permanent effect, to the extent of setting aside a section of the Constitution, we must have not only the language which compels us so to hold, but a situation which requires it.

The rules of interpretation which apply to statutes apply also to different provisions of the Constitution.

Courts are reluctant to declare an act unconstitutional when it has been on the statute books for a long time and many rights have been adjudicated under it: Commonwealth v. Gilligan, 195 Pa. 504, 511; Sugar Notch Borough, 192 Pa. 349, 358; Kucker v. Sunlight Oil & Gasoline Co., 230 Pa. 528, 533; Collins v. Martin et al., 290 Pa. 388, 394.

In Collins v. Martin et al., supra, it is said with reference to enforcing the constitutional mandates (p. 394):

"It is then the imperative duty of judges to hold strictly to the fundamental law, and prevent any violation of it whether through a direct effort by legislation peacefully to re-write any part of it, or an indirect one. . . ."

A careful analysis of the schedules themselves may be helpful. In Pennsylvania schedules are as old as the Constitutions. A schedule accompanied the Constitution of 1790 which changed the machinery from the Constitution of 1776; a schedule accompanied the amendment of 1857, the Constitution of 1874, as well as the amendments of 1909, and the interesting thing is that the introductory sentence in each of them is almost identical. In that of 1790 it read:

"That no inconvenience may arise from the alteration and amendments in the Constitution of this Commonwealth, and in order to carry the same into complete operation, it is hereby declared and ordained".

The schedules adopted in 1873 and 1909 are identical with each other and almost identical with the prior schedules. They read:

"That no inconvenience may arise from the changes in the Constitution of the Commonwealth, and in order to carry the same into complete operation, it is hereby declared".

The people, therefore, adopted the schedule so that "no inconvenience may arise from the change" and "in order to carry *the same* [namely, the change] into com-

plete operation". (Italics supplied.) It is apparent that each schedule was to operate only with reference to the change. The schedule carries no inherent evidence that any provision was intended to be permanent.

It would be an anomalous situation to hold that the schedule operated on something other than the "change". The people in no uncertain terms had determined that there should be no change in section 14 of article VIII. The Constitution, having dealt with State-wide officers, municipal officers, and election officers separately, determined that, as to the two former classes, changes were to be effected, but, as to election officers, there should be no change in the manner of election and they should continue to be elected annually. The fact that, by misinterpreting the Act of 1911, they have, since that time, been elected biennially, cannot authorize us to set aside the plain and unmistakable mandate of the Constitution.

The second paragraph of the schedule provides:

"In the case of officers elected by the people, all terms of office fixed by act of Assembly at an odd number of years shall each be lengthened one year, but the Legislature may change the length of the term, provided the terms for which such officers are elected shall always be for an even number of years."

We are urged to interpret that as a permanent provision looking to the future, because of the authority given to the legislature to change the length of term, and because of the word "always" necessarily looks to the future. But the answer to that suggestion is that the paragraph refers to "all terms of office fixed by an act of Assembly". The terms of election officers are not fixed by an act of assembly but by the Constitution itself, and therefore the legislature is not authorized prospectively to lengthen their terms or fix them at an even number of years.

We are not unmindful that in construing section 401 of the Pennsylvania Election Code to violate section 14 of article VIII grave consequences ensue.

In Commonwealth v. Columbia Gas & Electric Corp., 336 Pa. 209, 225, it is said:

"Instances are not lacking in which courts have so construed statutes as to uphold them and yet avoid arbitrary results."

But it is also held in Bowman's Case, 225 Pa. 364, 367:

"A constitutional direction as to how a thing is to be done is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient . . . and what is forbidden, either expressly or by necessary implication, in the constitution cannot become a law."

See also Dauphin County Grand Jury Investigation Proceedings (No. 3), 332 Pa. 358, 373.

In Orlosky v. Haskell, 304 Pa. 57, 62, it is said:

"There are certain canons of construction of statutes expressed as follows: 'The legislature must be intended to mean what it has plainly expressed . . . It matters not, in such a case, what the consequences may be. . . . Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it be absurd or mischievous. . . .': Endlich's Interpretation of Statutes, sec. 4 (citing cases)."

This language applies with equal force to the construction of constitutional provisions. There is no room for two meanings to be applied to the first sentence of section 14 of article VIII of the Constitution. There is no room for holding that the people, in adopting the schedule to carry into complete operation "the change in the Constitution", meant that the language of the schedule was to apply to provisions which they had voted not to change.

So, we cannot escape the conclusion that there is no constitutional authority for section 401 of the Pennsylvania Election Code, insofar as it attempts to provide that judges and inspectors of election shall be

elected by the electors thereof at the municipal election, and shall hold office for a term of two years.

We recognize that the effect of our conclusion is that election officers elected at the municipal election in odd-numbered years will serve de jure at the elections in even-numbered years, and they will be de facto officers at the elections held in the odd-numbered years. This situation will continue until it is properly corrected.

Judge Crumlish, in the Quarter Sessions Court of Philadelphia County, in In re Election Board Officers, 42 D. & C. 245, has come to the same conclusion with reference to the unconstitutionality of section 401 of the Election Code.

In view of our conclusions, it follows that Robert Harrison, serving as a judge of election at the primary September 9, 1941, was acting as a de facto officer.

The question then arises from what date the limitation runs pursuant to section 1 of the Act of April 6, 1939, P. L. 17, 19 PS §211, which amends section 77 of the Criminal Procedure Act of 1860.

This section provides that indictments for malfeasance or misfeasance in office may be brought or exhibited within two years "from the time when said public officer or said employe shall have ceased to occupy such office or such employment".

It needs no citation of authority to sustain the proposition that when Harrison acted on September 9, 1941, having no legal right to the office, he was merely a de facto officer, and therefore whatever functions he had performed with reference to that election ended at the time when he performed them, namely, September 9, 1941, because he had no right to continue as judge of election.

The Act of 1939 provides that "indictments for malfeasance, misfeasance, . . . may be brought . . . within two years from the time when said public officer or said employe shall have ceased to occupy such office

or such employment. . ." The indictment could not have been returned until September 20, 1943, the first day of the criminal court, subsequent to the bringing of the prosecution of August 24, 1943. It, therefore, necessarily follows that no legal indictment could then have been found.

In view of our conclusions, it is not necessary to pass upon the Commonwealth's contention that defendant is estopped from raising the question of the constitutionality of the statute because he was a de facto officer, and, having performed the duties and having received the emoluments of the office, he was subject to criminal prosecution for any violation of the law in performing the duties which went with the office.