345 A.2d 658
The SCHOOL DISTRICTS OF DEER LAKES AND ALLEGHENY VALLEY et al., Appellants,

v.

Robert P. KANE, Secretary of Revenue, et al.

Supreme Court of Pennsylvania.

Argued Oct. 11, 1974.

Decided Oct. 3, 1975.

Franklyn E. Conflenti, Charles F. Hodel, Jr., Ivan E. Birsic, David R. Cashman, Cauley, Birsic & Conflenti, Pittsburgh, for appellants.

Craig R. Burgraff, William H. Smith, Deputy Auditor Gen., Melvin R. Shuster, Gerald Gornish, Deputy Attys. Gen., Israel Packel, Atty. Gen., Harrisburg, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

In this appeal we are presented with a challenge to the constitutionality of Section 6(b), the so-called forfeiture provision, of the Public Utility Realty Tax Act, Act of March 10, 1970, P.L. 168, No. 66, § 6, 72 P.S. § 3271 *et seq.* (Supp.1975) [hereinafter PURTA,] in light of Article VIII, Section 4 of the Pennsylvania Constitution of 1968.[1] We have concluded that the challenge must fail.

---

1. Article VIII, Section 4, provides:
   "The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law.
   "Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to lo-

Before addressing the merits of the issue presented, it is necessary to give some of the background of the constitutional provision under consideration and a summary of the taxing scheme embodied in PURTA. Since the case involves the propriety of the sustaining of a demurrer, the salient allegations of the complaint must also be set forth. These background materials are contained in parts I and II of this opinion, respectively. Discussion of the question for decision is in part III.

I

Prior to the addition of Article VIII, Section 4, *supra,* note 1, to the Constitution of Pennsylvania [2] real property owned by public utilities and essential to their operation was generally exempt from local real estate taxation.[3] By the time of the Constitutional Convention of 1967–68 there had arisen concern that this exemption was depriving local taxing authorities of a substantial source of revenue.[4] Hence, Article VIII, Section 4, begins with a general abolition of this exemption. At the

cal real estate taxation by local taxing authorities shall remain in full force and effect.
### Schedule
"Section four shall take effect July 1, 1970, unless the General Assembly earlier provides enabling legislation in accordance therewith."

2. Article VIII, Section 4, was adopted by the Constitutional Convention of 1967–68 on February 28, 1968, and approved by the voters on April 23, 1968.

3. See in general Comment, Exemption of Real Property of Public Utilities from Local Taxation in Pennsylvania, 13 U.Pitt.L.Rev. 263 (1952).

4. See II Debates of the Pennsylvania Constitutional Convention of 1967–1968 at 699 (Remarks of Delegate Leonard) & at 1332 (Remarks of Delegate Woodring) [hereinafter cited as "Debates"].
   For an account of the history of Article VIII, Section 4, in the Constitutional Convention, see *American Telephone and Telegraph Co. v. Board of Property Assessment Appeals and Review of Allegheny County,* 461 Pa. 716, 337 A.2d 844 (1975). See also *Duquesne Light Co. v. Board of Property Assessment, Appeals and Review,* 10 Pa.Cmwlth. 41, 299 A.2d 660 (1973).

same time, however, there was also concern that simply eliminating the tax exemption which public utilities had theretofore enjoyed could produce a windfall for those municipalities within which much public utility realty happens to be situated while providing little or no benefit for other localities.[5] To avoid this undesired result, Article VIII, Section 4, also provides that local taxation of public utility realty may be replaced by a gross receipts or other special tax imposed and collected by the Commonwealth and distributed to local taxing authorities in a more equitable manner.

The public utility realty tax was imposed by PURTA as a special tax in place of local taxation of public utility realty.[6] That tax is an annual tax of thirty mills upon each dollar of the state taxable value [7] of public utility realty. § 3 of PURTA, 72 P.S. § 3273(a) (Supp.1975). Payment of the tax is to be made to the state treasurer by June 1 of each year and is to be accompanied by a report showing the computation of state taxable value upon which that payment is based. § 3 of PURTA, 72 P.S. § 3273. By April 1 of the following year each local taxing authority is to submit to the Department of Revenue a report stating, *inter alia*, (a) the authority's total tax receipts for the most recent completed fiscal year; (b) the assessed value of public utility realty within its jurisdiction; (c) the real estate tax rate of the taxing authority for its current fiscal year; and (d) the authority's realty

5. See I Debates 429 (Remarks of Delegate Woodring); II Debates 692 (Remarks of Delegate Baldus), 694 (Remarks of Delegate Amsterdam), and 709 (Remarks of Delegate Pott).

6. Section 4(a) of PURTA, 72 P.S. § 3274(a) (Supp.1975) provides:
"Payment of the tax imposed by section 3, and the distribution to local taxing authorities prescribed by section 7, shall be in lieu of local taxes upon utility realty, as contemplated by article VIII, section 4, of the Constitution of Pennsylvania."

7. The phrase "state taxable value" is defined in general as "the cost of utility realty, less reserves for depreciation and depletion, as shown by the books of account of a public utility . . . ." § 2(d) of PURTA, 72 P.S. § 3272(d) (Supp.1975).

tax equivalent, which is the product of item (b) multiplied by item (c). § 6 of PURTA, 72 P.S. § 3276 (Supp.1974). From these data the Department of Revenue is then to determine annually the aggregate tax receipts reported by all local taxing authorities and the aggregate realty tax equivalent reported by all local taxing authorities. § 8 of PURTA, 72 P.S. § 3278 (Supp.1975). By the following October 1 of each year the Department of Revenue is to distribute to each local taxing authority a share of the aggregate realty tax equivalent, each such share to bear the same ratio to the aggregate realty tax equivalent as the total tax receipts of a taxing authority bears to the aggregate tax receipts reported by all taxing authorities.[8] § 7 of PURTA, 72 P.S. § 3277 (Supp. 1975). Section 6(b) of PURTA, 72 P.S. § 3276(b) (Supp.1975), the provision which is here at issue, provides as follows:

> "If a local taxing authority shall fail to file the report required by subsection (a) by the date therein prescribed, or within any extension granted by the department [of revenue], it shall forfeit its right to share in the next-ensuing distribution made pursuant to section 7."

## II

The instant proceeding is an action in equity brought in the Commonwealth Court.[9] Plaintiffs, appellants

8. In the event that the moneys collected pursuant to the public utility realty tax are insufficient to make distribution to local taxing authorities in the amounts required by section 7 of PURTA the Department of Revenue is to satisfy the deficiency by making an additional assessment against each utility equal to the product of the state taxable value of the property of that utility multiplied by the ratio which the deficiency bears to the aggregate of state taxable value of all public utility property in the state. § 4 of PURTA 72 P.S. § 3274(b) (Supp.1975).

9. The Commonwealth Court had original jurisdiction of this suit by virtue of the Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 401, 17 P.S. § 211.401 (Supp.1975).

here, are local taxing authorities as that term is used in PURTA.[10] From the complaint herein we learn that the School District of Deer Lakes, as well as other unnamed taxing authorities, failed to file the annual reports required by Section 6(a) for the years 1971 and 1972 and in consequence did not receive any portion of the realty tax equivalent for those years. It is also averred that the remaining named appellants did file annual reports for 1971 and 1972 and therefore received their respective shares of the realty tax equivalent for those years as computed pursuant to Section 7. The complaint sets forth two alternative causes of action against the appellees, all of whom are officials of the Commonwealth of Pennsylvania. In the first cause of action the School District of Deer Lakes, on behalf of itself and all other local taxing authorities which had failed to file reports for 1971 and 1972,[11] sought, *inter alia*, to have the appellees directed to distribute to the members of the class that part of the proceeds of the public utility realty tax collected by the Commonwealth for 1971 and 1972 but not distributed to them because of their Section 6(b) forfeitures. The theory of this cause of action, as stated in the complaint, is that the forfeiture provision is unconstitutional, and therefore unenforceable, because it violated the directive of Article VIII, Section 4, of the Constitution that sums equal to the aggregate realty tax equivalent be distributed to local taxing authorities each year.

In the second cause of action the Townships of Springdale, Wilkins and Harmar, the Borough of Cheswick and the Allegheny Valley School District, on behalf of them-

10. The term "local taxing authority" is defined as "a county, city, institution district, borough, town, township or school district having authority to impose taxes on real estate." § 2(e) of PURTA, 72 P.S. § 3272(e) (Supp.1975).

11. It was alleged in the complaint that this class includes approximately 400 local taxing authorities for the year 1971 and 90 local taxing authorities for the year 1972.

selves and all other local taxing authorities which had filed reports and participated in the PURTA distributions for 1971 and 1972,[12] sought, *inter alia,* to have the appellees directed to distribute to the members of their class the same fund, estimated to be approximately $15,600,000, which the School District of Deer Lakes sought in the first cause of action to have distributed to the members of its class. It was alleged that if the members of the plaintiff class in the first cause of action were not entitled to the money retained by the Commonwealth pursuant to Section 6(b), then the members of the plaintiff class in the second cause of action were entitled to the forfeited fund because Article VIII, Section 4, requires that the entire amount of the aggregate realty tax equivalent be distributed to local taxing authorities and not retained by the Commonwealth.

Appellees responded with preliminary objections on grounds that the complaint failed to state a cause of action, that appellants' suit was barred by the doctrine of sovereign immunity, that the Commonwealth Court lacked jurisdiction of the case, that appellants' claims were precluded by laches and that appellants had an adequate remedy at law. The Commonwealth Court sustained the preliminary objections on the ground that appellants had failed to state a cause of action and dismissed the complaint without reaching the remaining preliminary objections. This appeal followed.[13]

In this Court appellants have raised but one issue: whether Section 6(b) of PURTA is constitutional. Appellants have not raised in their brief any questions regarding the dismissal of the second and alternative cause of action. Thus the issue presented by that cause of ac-

12. It was alleged in the complaint that this class includes approximately 2,745 local taxing authorities for the year 1971 and 3,055 local taxing authorities for the year 1972.

13. See Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P. S. § 211.203 (Supp.1975).

tion, i. e., whether the members of the class of taxing bodies purportedly represented in the second cause of action are entitled to the sums which were forfeited under Section 6(b) if the validity of that section is upheld, is not properly before us,[14] and the dismissal of that portion of the complaint which asserts the second cause of action must be affirmed regardless of our decision as to the validity of Section 6(b). To that question we now turn.

### III

There is, of course, a strong presumption in favor of the constitutionality of statutes [15]—a presumption which reflects on the part of the judiciary the respect due to the legislature as a co-equal branch of government.[16] Although the interpretation placed upon the constitution by the legislature in the course of its enactment of statutes is entitled to great weight, that interpretation cannot be conclusive upon the courts in their decision of cases, for judges, no less than legislators, are sworn to uphold the fundamental law. Thus, the courts may refuse to enforce a statute, but only if it *"clearly,*

14. See *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975).

15. See *City of Philadelphia v. Depuy*, 431 Pa. 276, 279, 244 A.2d 741, 743 (1968); *Commonwealth v. Life Assurance Co. of Pennsylvania*, 419 Pa. 370, 214 A.2d 209 (1965); *Milk Control Commission v. Battista*, 413 Pa. 652, 659, 198 A.2d 840, 843 (1974); *Anstine v. Zoning Board of Adjustment*, 411 Pa. 33, 190 A.2d 712 (1963).

16. "The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it. But the courts sit, not to review or revise the legislative action, but to enforce the legislative will; and it is only where they find that the legislature has failed to keep within its constitutional limits, that they are at liberty to disregard its action. . . ." (Footnote omitted). I Cooley, Constitutional Limitations 153 (8th ed. Carrington 1927).

*palpably,* and *plainly* violates the Constitution." *Tosto v. Pennsylvania Nursing Home Agency,* 460 Pa. 1, 331 A.2d 198 (1975); *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A. 2d 835, 840 (1963).

Our determination of the constitutionality of Section 6(b) of PURTA must begin with the language of Article VIII, Section 4, note 1 supra. As indicated above, the first sentence of the section abolishes the exemption from local real estate taxes previously enjoyed by public utilities. Section 4, then goes on, however, to provide that local taxation of public utility realty may be displaced by "[p]ayment to the Commonwealth of gross receipts or other special taxes . . . and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided . . . ." The "amount" to which the provision refers is to be "not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property . . . ." This amount is what PURTA terms the "realty tax equivalent." § 6(a) of PURTA, 72 P.S. § 3276(a) (Supp.1975). Article VIII, Section 4, provides that a sum "equivalent" to this amount "shall be distributed annually among all local taxing authorities . . . ."

Appellant's challenge to the constitutionality of Section 6(b) of PURTA is based entirely upon the phrase "shall be distributed" in Article VIII, Section 4. It is argued that this phrase constitutes a mandatory directive that the entire realty tax equivalent collected by the Commonwealth be distributed annually to local taxing authorities, and that Section 6(b) by providing for forfeiture, violates this mandatory directive. Although this argument finds some support in a literal reading of Article VIII, Section 4, the language of that section is not as rigid as appellants would have us hold.

The phrase "shall be distributed" undoubtedly expresses an intention on the part of the constitutional framers that any Article VIII, Section 4, tax is to be a source of revenue for local taxing authorities, not for the Commonwealth.[17] It does not necessarily follow, however, that *all* local taxing authorities must receive shares of the realty tax equivalent in all circumstances. When the constitution clearly sets forth the manner in which something shall be done, that procedure must be followed to the exclusion of all others, including a procedure which the legislature may prefer;[18] but when a constitutional provision contemplates the enactment of implementing legislation, the provision should, absent clear language to the contrary, be interpreted as establishing general guidelines for the forthcoming legislation, rather than mandatory directives as to its content. Here Article VIII, Section 4 expressly authorizes the enactment of a special tax such as PURTA in place of local taxation of public utility realty. The nature of the tax, however, and the details of its imposition, collection and distribution are not spelled out in the constitution. It must be assumed that the framers intended that the legislature should have freedom to make reasonable provision in these respects.

Turning specifically to the requirement of Article VII, Section 4 that the proceeds of the special tax be distributed it is to be noted that the framers were explicit in providing that distribution should be "in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be

17. See 2 Debates 1313–1314 (Remarks of Delegates Leonard and Gerber).

18. *Commonwealth ex rel. Specter v. Martin*, 426 Pa. 102, 232 A. 2d 729 (1968) (plurality opinion); *Commonwealth ex rel. Smillie v. McElwee*, 327 Pa. 148, 158–59, 193 A. 628 (1937); *Bowman's Case*, 225 Pa. 364, 367, 74 A. 203 (1909); see also *Tausig v. Lawrence*, 328 Pa. 408, 412–13, 197 A. 235 (1938).

provided by law". This authorization to the General Assembly is surely sufficiently broad to allow a scheme of distribution of the proceeds of the special tax based upon information concerning local real estate tax rates and receipts to be furnished by the local taxing bodies.[19] To this end the legislature should have latitude to set up an efficient method whereby the state officials can acquire the necessary information; part of establishing such a method is to provide for the consequences of failure of the local units to furnish such information. Accordingly, we conclude that while an Article VIII, Section 4, tax must provide in general for the distribution to local taxing authorities of the realty tax equivalent, it is not necessary that each local taxing authority receive a share in all circumstances. We deem it sufficient that a special tax enactment such as PURTA provide for the apportionment of the entire realty tax equivalent among all local taxing authorities and for the distribution of the respective shares to each authority *which has fulfilled all reasonable requirements*—a reasonable requirement being one which is neither unduly burdensome nor unrelated to the proper operation of the taxing scheme.

The only condition to the receipt by local taxing authorities of their respective shares of the PURTA distribution is the timely filing of the annual report required by Section 6(a). This requirement for reporting is directly related to the efficient operation of the PURTA system of taxation; it supplies the essential data for the calculation of the respective shares of realty tax equivalent. Appellants do not contend that their right to distribution may not be conditioned on the filing of reports, or that the condition is arbitrary, inequitable or burden-

19. The complaint contains no allegation that the data required to be filed under Section 6(a) of PURTA is available to the Department of Revenue independently of being furnished by the local taxing authorities.

some.[20]  Their quarrel is with the consequence of forfeiture when reports are not timely filed.

The forfeiture provision is not only an incentive to local taxing authorities to file their annual reports on time, thereby promoting the efficiency of the taxing system; it is an essential feature of accomplishing the equitable distribution stipulated by the constitution.  For only by providing for forfeiture by delinquent taxing bodies is the Department of Revenue enabled to compute the respective shares of those local taxing authorities which have timely filed their annual reports and to make distribution of those shares notwithstanding the delinquency of some local units.  Without forfeiture, it would be impossible to ascertain the shares of any local authorities as long as one of them was delinquent, since the size of each share would be dependent upon the sum total of information sought from all local bodies.  Thus a single delinquent local taxing authority could delay indefinitely distribution to all other authorities.  Not only would this be inequitable to those who had complied, but it might also conflict with the provision of Article VIII, Section 4, that distributions be made annually.

To recapitulate, we hold that Section 6(b) imposes a reasonable condition to the receipt by each local taxing authority of its share of the PURTA distribution, and that it is therefore not violative of the Article VIII, Section 4, provision that a sum equivalent to the amount of money local taxing authorities could have collected by taxing the real property of public utilities "shall be distributed" annually to all local taxing authorities.

Decree affirmed.  Each party to pay own costs.

20.  Appellants suggest in their brief in this Court that the clause of Section 6(b) which allows the Department of Revenue to grant extensions of time for the filing of the annual reports is an unconstitutional delegation of legislative power.  Appellants did not allege in their complaint that they requested and were denied an extension of time, and the suggestion has no bearing on the question whether the forfeiture provision is valid in light of Article VIII, Section 4 of the constitution.