399 A.2d 360

**William DANSON and Edith, his wife, Stanford Martin, Sr., and Susie, his wife, Samuel Williams and Janice, his wife, Hirsh Segal and Ruth, his wife, Lloyd Westfield and Nancy, his wife, Cruz Quinones and Maria, his wife, and School District of Philadelphia, Appellants,**

v.

**Robert E. CASEY, State Treasurer, and Caryl M. Kline, Secretary of Education.**

Supreme Court of Pennsylvania.

Argued May 23, 1978.

Decided March 14, 1979.

Rehearing Denied April 13, 1979.

416

John R. McConnell, Morgan, Lewis & Bockius, Philadelphia, for appellants.

Allen C. Warshaw, Deputy Atty. Gen., Harrisburg, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellants allege that because the Philadelphia School District has and can expect to have inadequate revenues, the statutory system by which the School District of Philadelphia is funded violates Article III, section 32[1] and Article

---

1. Pa.Const., art. III, § 32 provides, inter alia:
   "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
   1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:"
   
   * * * * * *

III, section 14 [2] of the Pennsylvania Constitution. Appellants, the School District of Philadelphia and parents of children attending Philadelphia public schools, filed a Petition for Review in Commonwealth Court in April 1977. The Petition alleged that because expenditures exceeded revenues for the 1976–77 school year, the School District of Philadelphia would be compelled to close its schools early unless it received additional state funds. The predicted early closing did not occur and on June 23, 1977, appellants filed an Amended Petition for Review. Their amended petition alleges that although the School District would be able to operate for a full school year in 1977–78, estimated expenditures exceeded estimated revenues by $158,537,299 and the School District would be able to offer its students only a "truncated and uniquely limited program of educational services."

Appellants seek a decree enjoining and restraining appellees, the State Treasurer and State Secretary of Education, from making payments of state funds to any school district other than Philadelphia until (a) "sufficient funds are made available to the School District of Philadelphia to enable it to furnish the children of Philadelphia in the 1977–78 school year and thereafter with a normal program of full educational services, or (b) the funds subject to defendants' disposition are so distributed that the programs of educational services furnished the children of the Commonwealth of Pennsylvania in the 1977–78 school year and thereafter are substantially uniform throughout all the school districts of the state." [3]

**2.** Pa.Const., art. III, § 14 provides:

"The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

**3.** Appellants' request for relief does make certain exceptions and would allow appellees to continue to make payments to school districts other than the School District of Philadelphia for use "(a) for debt service or lease rentals, or (b) for the repayment of loans secured by a pledge of anticipated payments by the Commonwealth, or (c) upon prior approval of [Commonwealth] Court to relieve extraordinary hardship . . . .."

Appellees filed preliminary objections to both the original and Amended Petitions for Review on the grounds that appellants had failed to state a cause of action and that the School District of Philadelphia was without standing. Commonwealth Court sustained appellees' preliminary objections and dismissed the action. *Danson v. Casey,* 33 Pa.Cmwlth. 614, 382 A.2d 1238 (1978).

In reviewing Commonwealth Court's determination we must accept as true every well and clearly pleaded fact and all reasonable inferences therefrom. *Gekas v. Shapp,* 469 Pa. 1, 364 A.2d 691 (1976); *Buchanan v. Brentwood Federal Savings and Loan Assn.,* 457 Pa. 135, 320 A.2d 117 (1974). We need not accept as true, however, the conclusions drawn from those facts or the averments of law contained in the pleadings. *Borden v. Baldwin,* 444 Pa. 577, 281 A.2d 892 (1971). When viewed in this light it is clear that appellants have failed to state a justiciable cause of action. We therefore affirm the decree of Commonwealth Court dismissing the action.[4]

## I

Appellants' constitutional challenge to the state financing system is broad and general. They do not purport to challenge any particular portion of either the state subsidy or local taxation aspects of the scheme. Instead, appellants' basic constitutional claim is that, viewed as a whole, the Pennsylvania system of school financing fails to provide Philadelphia's public school children with a thorough and efficient education and denies them equal educational opportunity solely because of their residence in the School District of Philadelphia.

The statutory scheme by which Pennsylvania's public schools are financed creates two primary sources of fund-

4. We hear this appeal pursuant to Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P.S. § 211.203 (Supp.1979). This case was reassigned to the writer on January 19, 1979, for the purpose of preparing an opinion expressing the views of a majority of this Court.

ing—state subsidies and local taxation.[5] State subsidies are distributed by appellees, the State Treasurer and State Secretary of Education, to each of Pennsylvania's 505 school districts pursuant to a complex statutory formula. See generally, School Code, 24 P.S. §§ 25–2501 et seq.

For each child enrolled in school, districts are eligible to receive a percentage of the median statewide actual instructional expense per student.[6] This percentage is computed by dividing the market value of the district's real estate and its personal income tax bases by the number of the district's students and comparing it to the state average real estate and income tax bases per student.[7] If the district and state tax base are equal, the district receives fifty percent of actual or median student cost, whichever is lower.[8] If the district's tax base is higher than the average state tax base, state support is lower.

This basic instructional subsidy is supplemented by dollar payments for each poverty-level or welfare student. "Density" and "sparsity" payments are made to districts with certain levels of either high or low population per square mile. In addition to the instructional subsidy, each school district also receives state funds earmarked to help defray the cost of specific services incidental to instruction such as, inter alia, health care, transportation, drivers education, and technical and special education.

Local tax revenues, however, are the major source of school financing in Pennsylvania. Generally, the power to

5. Federal funding constitutes another important source of revenue for Pennsylvania school districts.

6. The number of secondary school students is weighted, presumably to reflect higher costs of instruction. A "weighted average daily membership (WADM) is then calculated. The WADM exceeds actual enrollment.

7. The relative personal income tax base comprises forty percent of the aid ratio and the real estate value comprises sixty percent.

8. The amount of instructional subsidy actually received is also, in part, a function of the school district's taxing effort. The more the district's effort sinks below the median statewide taxing effort, the more the figure to which the percentage is applied decreases.

levy local school taxes is vested in the local elected school board which has direct control over local educational programs. Section 507 of the School Code, Act of March 10, 1949, P.L. 30, § 507, 24 P.S. § 5–507, vests in each school district "all the necessary authority and power annually to levy and collect, in the manner herein provided, the necessary taxes required, in addition to the annual State appropriation" and "all necessary power and authority to comply with and carry out any or all of the provisions of this act." Despite broad language vesting power to levy and collect "the necessary taxes required," the school board's power to levy taxes is not unlimited. The General Assembly has imposed strict ceilings on the amount of taxes most school districts may levy and collect. School Code, 24 P.S. § 6–672.

Philadelphia is Pennsylvania's only school district of the first class. See School Code, 24 P.S. § 2–201. Pursuant to statutory authority, the voters of Philadelphia have adopted a home rule school district. See Act of August 9, 1963, P.L. 643, §§ 1 et seq., 53 P.S. §§ 13201 et seq.; Educational Supplement to the Philadelphia Home Rule Charter (hereinafter Charter). While boards of education of other classes of school districts must be elected, School Code 24 P.S. §§ 3–301 et seq., section 12.12–201 of the Charter authorizes appointment of Philadelphia's school board by the Mayor of Philadelphia. See also School Code, 24 P.S. § 3–301. Because the General Assembly may delegate its legislative power to levy taxes only to elected officials, the Philadelphia School Board does not have direct power to levy local taxes. *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90 (1937). The School District of Philadelphia is, therefore, in a unique position with regard to local taxation.

The Educational Supplement to the Philadelphia Home Rule Charter grants the Board of Education indirect power to levy local taxes to provide funds for current operation of the Philadelphia public schools. "At least sixty (60) days prior to adoption of the annual operating budget, the Board shall adopt and submit to the Mayor and Council a lump sum statement of anticipated receipts and expenditures for the next fiscal year and a request for authority to levy taxes to

balance its budget for the year." Charter § 12.12–303(b). Section 12.12–305 of the Charter mandates that the local tax levy be sufficient to finance the school district's operations adequately for the fiscal year.[9]

By statute, City Council is empowered to authorize the School Board to levy taxes sufficient to balance the school district's annual operating budget on "any persons, transactions, occupations, privileges, subjects, and real and personal property" which are taxable by the city. Act of August 9, 1963, P.L. 640, § 1, as amended, November 16, 1967, P.L. 500, § 1, 53 P.S. § 16101. Subject to certain limited exceptions, levies may also be made upon "income of all kinds from the ownership, lease, sale or other disposition of tangible and intangible real and personal property of persons who are residents of the school district, whether or not such income may presently be subject to tax by the city for general revenue purposes . . . ." Id. Levies may also be imposed, inter alia, upon net corporate income, Act of May 29, 1969, P.L. 47, § 1, et seq., 53 P.S. § 16111 et seq., and liquor sales, Act of June 10, 1971, P.L. 153, § 1, et seq., 53 P.S. §§ 16131 et seq.

## II

Appellees, the State Treasurer and State Secretary of Education, have not breached any duty owed to any of the appellants. They have distributed those state funds earmarked for public education pursuant to the legislatively enacted formula. Nonetheless, appellants claim the state statutory formula is unconstitutional and that appellees

**9.** § 12.12–305(a) of the Charter provides:

"The Board of Education shall levy taxes annually within such limits and upon such subjects as the General Assembly of the Commonwealth or the Council of the City may from time to time prescribe, in amounts sufficient to provide funds for the current operation of the schools of the District, the payment of interest and sinking fund charges on or other amortization of the debt of the District and its predecessor districts, and to provide for any service which may be incidental to the operation of the schools. Provided, that if the rate of taxation shall be fixed at a mill rate it shall also be stated in dollars and cents on each one hundred dollars of assessed valuation."

must be enjoined from acting pursuant to it, until the legislative scheme is revised to guarantee that the School District of Philadelphia will receive whatever sum of money it deems necessary to operate the Philadelphia schools.

■ It is obvious, however, that appellant School District of Philadelphia has failed to allege that it has suffered any legal harm from its projected financial deficit. The School District argues that it has a duty to provide a certain level of educational services which it cannot fulfill because of the effect of the statutory funding scheme. This argument must fail. The School District has no greater duty to provide education for the children of Philadelphia than the Legislature has delegated to it. Cf. *Wilson v. Philadelphia School District*, supra. It would be unreasonable to conclude that a greater duty has been delegated than that which the Legislature, through the statutory funding scheme, has provided the school district the means to fulfill.

■ Moreover, the Amended Petition for Review does not allege that either the Legislature or School District has failed to fulfill any duty to appellant parents and school children. Nowhere do appellants allege that any Philadelphia public school student is, has, or will, suffer any legal injury as a result of the operation of the state financing scheme. And the Amended Petition for Review does not allege that the children of Philadelphia are being denied an "adequate," "minimum," or "basic" education. Rather, appellants only allege that they are being denied a "normal program of educational services" available to all other children in Pennsylvania and that in its place they will be offered only a "truncated and uniquely limited program of educational services." As a result the children of Philadelphia are allegedly "rendered less able to make their contribution to their own well-being and prosperity and to the well-being and prosperity of their city." [10]

The allegations are insufficient to support a cause of action unless appellant school children are entitled to "a

**10.** Appellants argue that we should follow the lead of other jurisdictions where challenges to school financing schemes have been successful. See, e. g., *Board of Education of the City School District of*

normal program of educational services" available to all other public school students in the Commonwealth. Appellants contend that Article III, section 32 and Article III, section 14 of the Pennsylvania Constitution, by providing for "a thorough and efficient system of public education," guarantee them a constitutionally mandated minimum level of educational services, provided to the children of all other districts.

More than forty years ago, this Court recognized that because educational philosophy and needs change constantly, the words "thorough and efficient" must not be narrowly construed. In *Teachers' Tenure Act Cases,* 329 Pa. 213, 224, 197 A. 344, 352 (1938), this Court characterized Article III, section 14 as a "positive mandate" that the Legislature "provide for the maintenance and support of a thorough and efficient system of public schools." The Court then explained the substance and effect of the Constitutional "mandate":

*Cincinnati v. Walter,* No. C–780001 (Ohio Ct. of App., filed Sept. 5, 1978); *Board of Education v. Nyquist,* 94 Misc.2d 466, 408 N.Y.S.2d 606 (Sup. Ct. 1978); *Robinson v. Cahill,* 62 N.J. 473, 303 A.2d 273 (1973); *Serrano v. Priest,* 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971). Essential to those decisions, however, was evidence that the particular state's financing system resulted in some school districts having significantly less money than other districts, causing gross disparities in total and per child expenditures throughout the state. No such allegation has been made in this case. Indeed, the School District of Philadelphia ranks fifth in current expenditures per WADM and seventh in total expenditures per WADM among the Commonwealth's 505 school districts. Well over 75% of the general fund revenues of each of the six districts with greater total expenditures than Philadelphia are derived from local sources. Local source revenues constitute from 87.4% to 92.4% of the total general fund revenues of the five districts with greater current expenditures. Of those five districts, state subsidies constitute only 6% to 10.5% of the total funds expended for school district operation. Federal grants constitute 2.1% to .7% of the entire general funds. In contrast, only 39.6% of Philadelphia's general fund revenues are derived from local sources. The greatest portion of Philadelphia school district funding, 44.8%, is obtained from state subsidies. The final 15.6% of the general revenue funds come from federal subsidies. Pennsylvania Department of Education, Our Schools Today: Public School Financial Statistics Report 1976–77 (1978).

"In considering laws relating to the public school system, courts will not inquire into the reason, wisdom, or expediency of the legislative policy with regard to education, but whether the legislation has a reasonable relation to the purpose expressed in Article X, Section 1 [the predecessor provision to Article III, section 14], and whether the fruits or effects of such legislation impinge the Article by circumscribing it, or abridging its exercise by future legislatures within the field of 'a thorough and efficient system of public schools.' So implanted is this section of the Constitution in the life of the people as to make it impossible for a legislature to set up an educational policy which future legislatures cannot change. The very essence of this section is to enable successive legislatures to adopt a changing program to keep abreast of educational advances. The people have directed that the cause of public education cannot be fettered, but must evolute or retrograde with succeeding generations as the times prescribe. Therefore, all matters, whether they be contracts bearing upon education, or legislative determinations of school policy or the scope of educational activity, everything directly related to the maintenance of a 'thorough and efficient system of public schools,' must at all times be subject to future legislative control. One legislature cannot bind the hands of a subsequent one; otherwise we will not have a thorough and efficient system of public schools."

329 Pa. at 224–25, 197 A. at 352.

■ The Constitution "makes it impossible for a legislature to set up an educational policy which future legislatures cannot change" because "the very essence of this section is to enable successive legislatures to adopt a changing program to keep abreast of educational advances." It would be no less contrary to the "essence" of the Constitutional provision for this Court to bind future Legislatures and school boards to a present judicial view of a constitutionally required "normal" program of educational services. It is only through free experimentation that the best possible educational services can be achieved.

Even were this Court to attempt to define the specific components of a "thorough and efficient education" in a manner which would foresee the needs of the future, the only judicially manageable standard this Court could adopt would be the rigid rule that each pupil must receive the same dollar expenditures. Even appellants recognize, however, that expenditures are not the exclusive yardstick of educational quality, or even of educational quantity. It must indeed be obvious that the same total educational and administrative expenditures by two school districts do not necessarily produce identical educational services. The educational product is dependent upon many factors, including the wisdom of the expenditures as well as the efficiency and economy with which available resources are utilized.

Nonetheless, appellants argue that it is proper for courts to order that educational offerings be uniform. Indeed, they claim that the Pennsylvania Constitution demands such uniformity. In originally adopting the "thorough and efficient" amendment to the Pennsylvania Constitution of 1873, the framers considered and rejected the possibility of specifically requiring the Commonwealth's system of education be uniform. II Debates of the Convention to Amend the Constitution of Pennsylvania, 422–26 (1873). Instead, the framers endorsed the concept of local control to meet diverse local needs and took notice of the right of local communities to utilize local tax revenues to expand educational programs subsidized by the state.

Nor is uniformity required by Article III, section 14. As long as the legislative scheme for financing public education "has a reasonable relation" to "[providing] for the maintenance and support of a thorough and efficient system of public schools," *Teachers Tenure Act Cases*, 329 Pa. at 224, 197 A. at 352, the General Assembly has fulfilled its constitutional duty to the public school students of Philadelphia. The Legislature has enacted a financing scheme reasonably related to maintenance and support of a system of public education in the Commonwealth of Pennsylvania. The framework is neutral with regard to the School District

of Philadelphia and provides it with its fair share of state subsidy funds. This statutory scheme does not " '*clearly, palpably,* and *plainly* violate the Constitution' " (emphasis in original). *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 16, 331 A.2d 198, 205 (1975); *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A.2d 835, 840 (1963).

## III

Thus, the Commonwealth has not failed to fulfill any duty it may have to the School District of Philadelphia to provide state subsidies to help finance public school education. To the extent appellants complain of inadequate local revenues, appellees, the State Treasurer and State Secretary of Education, cannot provide relief. Those two named officials of the executive branch of state government lack constitutional, statutory, or administrative authority to increase local Philadelphia school revenues.

■ We must reject any contention that because the Philadelphia School Board does not have power directly to levy taxes, Article III, section 32 of the Pennsylvania Constitution has been violated. *Commonwealth v. Gilligan,* 195 Pa. 504, 46 A. 124 (1900). See also *English v. Robinson Twp. Sch. Dist.,* 358 Pa. 45, 53–54, 55 A.2d 803, 808 (1947) ("The school boards of districts of the same class may tax at different rates without infringing the provision against local or special legislation"). Indeed, Philadelphia arguably benefits from the operation of the school financing scheme for *more sources of taxation are made available to Philadelphia* than to any other category of school district. See, e. g., 53 P.S. §§ 16101 et seq., 53 P.S. §§ 16111 et seq., 53 P.S. §§ 16131 et seq., 24 P.S. §§ 6–651 et seq., 24 P.S. §§ 581.31 et seq., 24 P.S. §§ 582.1 et seq., 24 P.S. §§ 583.1 et seq., 24 P.S. §§ 584.1 et seq., 24 P.S. §§ 586.1 et seq., 24 P.S. §§ 588.1 et seq. The Philadelphia School District's ability to obtain local tax funds is limited only by the ability of its appointed school board to convince City Council and the Mayor that the levies it requests are necessary for current operation of the school district. See Charter §§ 12.12–303 and 12.12–305.

Whatever the source of the School District of Philadelphia's endemic inability to obtain the funds the School District deems are necessary for it to offer its students a "normal program of educational services," appellants by this litigation seek to shift the burden of supplying those revenues from local sources to the Commonwealth. This Court, however, may not abrogate or intrude upon the lawfully enacted scheme by which public education is funded, not only in Philadelphia, but throughout the Commonwealth.

Decree of the Commonwealth Court affirmed. Each party pay own costs.

POMEROY, former J., did not participate in the decision of this case.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joins.

MANDERINO, Justice, dissenting.

Unfortunately, the majority has failed to grasp the significance and meaning of appellant's position in this appeal. As a result, the majority addresses itself to issues that are not even raised by appellants, denies relief as to claims that appellants do not make, applies the wrong constitutional analysis, and reaches the wrong result. I therefore dissent.

Initially, the majority accurately identifies the problem presented by appellants:

". . . appellants' basic constitutional claim is that, *viewed as a whole, the Pennsylvania system of school financing fails to provide* Philadelphia's public school children with *a thorough and efficient education* and *denies* them *equal educational opportunity* solely because of their residence in the School District of Philadelphia." (Emphasis added.)

At p. 363.

Clearly, appellants' attack is upon the statutory scheme of school financing, and not upon the actions taken by appellees pursuant to that scheme. The majority's assertion that "[a]ppellees . . . have not breached any duty owed to any of the appellants" (p. 365) is therefore irrelevant.

Furthermore, the majority's conclusions that "[t]he School District has no greater duty to provide education for the children of Philadelphia than the Legislature has delegated to it" and that "[i]t would be unreasonable to conclude that a greater duty has been delegated than that which the Legislature, through the statutory funding scheme, has provided the school district the means to fulfill" (p. 365), are flatly contradicted by the pleadings, the allegations of which must be accepted as true for the purposes of this appeal. This is precisely what appellants contend—that the Philadelphia School District is required by both the statutes and constitution of this Commonwealth to provide more than can be provided by the Philadelphia School District pursuant to the present statutory scheme.

This appeal comes before us on the pleadings, hence we accept as true every well-pleaded material fact set forth in appellants' complaint, as well as all reasonable inferences deducible from those facts. *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Buchanan v. Brentwood Federal Savings and Loan Assn.*, 457 Pa. 135, 320 A.2d 117 (1974).

Pennsylvania, like many other states, has enacted a statutory system of public school financing whereby the two primary sources of funds for public schools are local taxation and state subsidy. The state subsidy payable to each school district is computed by means of a complex formula in which student enrollment, district spending per student, and the district's relative wealth are taken into account. Like every other school district in the state, Philadelphia receives state funds which pay part of the cost of the public school program. Appellants do not challenge the state *subsidy portion* of the financing system, nor do they claim that the *subsidy formula* is insufficient to compensate for imbalances in local tax bases, or that Philadelphia is discriminated against in any way in the *implementation* of the subsidy program. Indeed, nowhere do appellants allege that the subsidy portion of the system provides less money for education in Philadelphia, either in total or per child, than any other district in the Commonwealth. Rather, appellants'

attack on the Pennsylvania system of financing public school education centers on the distinction which the state's system makes between the Philadelphia School District and other school districts in the state in the manner in which it raises funds by local taxation.

Under Pennsylvania's education financing system, the Philadelphia School District is unique in that it alone among all the school districts in the Commonwealth is denied independent power to levy and collect the local taxes necessary to insure that its children receive a thorough education. Only the Philadelphia School District needs to have specific enabling ordinances passed by the municipal governing body, Philadelphia City Council, before it can levy and collect the local taxes its School District considers necessary to provide a minimum level of education. Unlike other school districts in the state, if the total amount of the state subsidy, plus the local taxation, is not sufficient to provide a full educational program, the Philadelphia School District is without a statutory mechanism for raising the additional needed funds, on its own. It needs the approval of *another* body. No other school district in the state is thus handicapped.

Thus appellants' amended complaint sought to present two narrowly-stated causes of action: first, it alleged that the statutory classification which distinguishes between the Philadelphia School District and all other state school districts by preventing the Philadelphia School District from levying taxes it considers necessary to finance public education in Philadelphia violates the equal protection clause, Article III, Section 32, of the Pennsylvania Constitution; and second, that the Philadelphia School District's unique inability to levy taxes deprives Philadelphia School District of the same opportunity to determine locally what funds are necessary to provide a "thorough and efficient" education for Philadelphia school children as is enjoyed by other school districts throughout the state, in violation of Article III, Section 14.

Appellants' complaint does not ask this court to define "the specific components of a 'thorough and efficient education'" as contended by the majority (p. 366), nor does it ask

that this Court impose any rigid rules as to how much money each school district must receive, nor do appellants argue that this Court should order that education throughout the Commonwealth must be "inferior" (p. 366–367). Simply stated, appellants' complaint charges appellees with administering a public school finance system which discriminates against Philadelphia school children *because the statutory scheme deprives the Philadelphia School District on its own—and no other school district in the state—of the ability to levy taxes in an amount considered necessary by the School District* to provide a thorough and efficient system of education to those children served by it.

School districts, like municipal corporations, have no inherent power to tax. Such power can be delegated by the General Assembly, however, and section 507 of the Public School Code, 24 P.S. § 5–507 (1962), vests in each board of school directors "all the necessary authority and power annually to levy and collect, in the manner herein provided, the necessary taxes required in addition to the annual State appropriation." It has been the law of this jurisdiction for over 40 years, however, that a general delegation of taxing power to a nonelective body is impermissible. *Wilson v. School District of Philadelphia,* 328 Pa. 225, 229, 195 A. 90, 94 (1937). The School District of Philadelphia is Pennsylvania's only school district of the first class, and unlike all other school boards in the state Philadelphia School District's School Board is appointed. Act of March 10, 1949, P.L. 30, art. III, § 302, as amended 24 P.C.S.A. § 3–302(a) (1978–79 Supp.). The Philadelphia School District is therefore in a different position in regard to the delegation of taxing power than any other school district in the Commonwealth.

The Philadelphia School District's taxing ability emanates from section 17 of the First Class City Home Rule Act (53 P.S. § 13131) (which empowers the elected municipal government of first class cities to "exercise . . . any and all powers relating to its municipal functions . . . to the full extent that the General Assembly may legislate in reference thereto . . .," and section 1 of the Act of August 9, 1963, P.L. 640 (as amended, 53 P.S. § 16101).

Pursuant to this authority, the Philadelphia Home Rule Charter, § 12.12–200 et seq., empowers the appointed school board to impose certain taxes, subject to the approval of the elected City Council, on "any persons, transactions, occupations, privileges, subjects, and real and personal property" which are taxable by the city, 53 P.S. § 16101; as well as a net corporate income tax, 53 P.S. § 16111, et seq.; and a tax on liquor sales, 53 P.S. § 16131 et seq. Thus the Philadelphia School District's ability to collect local funds through taxation is limited by the ability of its appointed school board to convince the elected representatives of the taxpayers that additional expenditures are required.

We do not know from the pleadings in this case why Philadelphia City Council will not, or cannot, levy the taxes needed to generate sufficient funds to satisfy appellants' alleged needs. The pleadings allege that Philadelphia City Council has not provided the funds considered necessary by the School District, and that the School District has exhausted its power to levy additional taxes of any kind.

Based on these alleged facts, appellants assert that Pennsylvania's statutorily prescribed system of school financing—containing, as it does, both state subsidy and local taxation elements—fails to comply with the mandate of Article III, § 14 of the Pennsylvania Constitution, and that that system of financing public education denied Philadelphia children equal protection of the laws under the Fourteenth Amendment to the United States Constitution, and under Article III, Section 32 of the Constitution of Pennsylvania.

The content of the Equal Protection Clause of the Federal Constitution, and of Article III, Section 32 of the Pennsylvania Constitution, have been said to be the same, and the tasks of the court, when asked to rule on the constitutionality of a statute challenged under either clause are identical. *Baltimore and O. R. Co. v. Department of Labor and Industry,* 461 Pa. 68, 334 A.2d 636 (1975). Normally, legislative enactments are presumed valid, and will be declared unconstitutional by the courts only upon a showing that they clearly violate constitutional prohibitions. *School Districts of Deer Lakes and Allegheny Valley v. Kane,* 463 Pa. 554,

434

345 A.2d 658 (1975); *Lattanzio v. Unemployment Comp. Bd. of Review,* 461 Pa. 392, 336 A.2d 595 (1975); *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975). Furthermore, as a general rule, state regulation of economic activity need measure up only to the "rational relation" test: that is, if the legislatively created distinction bears a rational relationship to the advancement of a legitimate state interest, the statute creating that distinction may not be held invalid on equal protection grounds. Id. The question is also sometimes stated as whether the challenged legislation bears a fair and substantial relationship to the objective. *In re Estate of Cavill,* 459 Pa. 411, 329 A.2d 503 (1974). *Moyer v. Philips,* 462 Pa. 395, 341 A.2d 441 (1973). Where the state statutory scheme affects fundamental constitutional rights or involves suspect classifications, however, both federal and state courts have recognized that proper equal protection analysis requires more search scrutiny. *See, e. g., San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Baltimore and O. R. Co., supra,* 461 Pa. at 83, 334 A.2d at 643. Therefore if the complained of state action would discriminate by employing suspect classification, the state must demonstrate that such discrimination is necessary to advance a compelling state interest. *San Antonio School District v. Rodriguez, supra; Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *McLaughlan v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Likewise, if the challenged legislative judgment interferes with rights made fundamental by the constitution, the reviewing court will closely scrutinize the enactment to ascertain whether the state has carried its heavy burden justifying the statutory scheme by demonstrating that the enactment has been "structured with 'precision', and . . . 'tailored' narrowly to serve legitimate objectives and that [the state] has selected the 'less drastic means' for effectuating its [compelling] objectives." *San Antonio School District v. Rodriguez, supra,* 411 U.S. at 17, 93 S.Ct. at 1288, 36 L.Ed.2d at 33. As stated by the court in *San*

*Antonio School District v. Rodriguez,* the framework for the court's analysis is as follows:

"[The Court] must decide, first, whether the Texas system of financing public education operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. If so, the judgment of the District Court should be affirmed. If not, the Texas scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment."

Id.

In upholding the educational financing system used by the state of Texas, the United States Supreme Court, in *San Antonio School District v. Rodriguez, supra,* said,

". . . the key to discovering whether education is 'fundamental' is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution.

*Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." (Footnotes omitted.)

411 U.S. at 33–34, 93 S.Ct. at 1297, 36 L.Ed.2d at 43–44.

Implicit in this conclusion is its converse—that had the right to a public education been afforded explicit or implicit

protection by the federal constitution, it would have been a "fundamental" right, and any legislation interfering with that right would be required to withstand strict judicial scrutiny.

"[S]trict scrutiny means that the State's system is not entitled to the usual presumption of validity, that the State rather than the complainants must carry a 'heavy burden of justification,' that the State must demonstrate that its educational system has been structured with 'precision,' and is 'tailored' narrowly to serve legitimate objectives and that it has selected the 'less drastic means' for effectuating its objectives, . . ." (Footnote omitted.) *Id.* at 16–17, 93 S.Ct. at 1288, 36 L.Ed.2d at 33.

The Pennsylvania system of financing public education impinges upon Philadelphia's children's constitutionally mandated right to a "thorough" public education, a right explicitly recognized and protected by Article III, Section 14 of the constitution of this Commonwealth. Because appellants' petition alleges that the statutory financing scheme interferes with that constitutional right, it must be closely scrutinized to ascertain whether the alleged discrimination may be justified by "a showing of a compelling state interest, incapable of achievement in some less restrictive fashion . . ." *Commonwealth v. Bethea,* 474 Pa. 571, 379 A.2d 102, 104–5 (1977). The majority therefore errs when it concludes that because the public education financing scheme passes constitutional muster simply because it is "reasonably related" to the maintenance and support of the state's public education system. (p. 367).

As has already been pointed out, Article III, Section 14 of Pennsylvania's Constitution gives explicit protection to the right to a public education. That provision states,

"The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

As has also been noted earlier in this opinion, the analysis to be applied to an alleged violation of the equal protection

of the laws guaranteed by Article III, Section 32 of our constitution is identical to that employed in federal equal protection questions. While not compelling on the state constitutional issue, we find the reasoning of the United States Supreme Court in *San Antonio School District v. Rodriguez, supra,* dispositive of the instant case. Because the right to a public education is constitutionally recognized in Pennsylvania, any state action interfering with that right must be closely examined before it can be said to pass constitutional muster. Such state action will not be entitled to the usual presumption of validity, but rather, the Commonwealth must establish that its interference with that right is compelled by some legitimate state interest, and that the interference is the least drastic means of accomplishing that objective. Appellants in this case allege that the Pennsylvania School financing system interferes with the right of the children of Philadelphia to a public education equal to that of other children in the state. At this procedural state of the litigation, that allegation must be accepted as true. It is therefore incumbent upon the Commonwealth to meet its burden. By sustaining appellees' demurrer, the trial court failed in its duties to put the Commonwealth to that test. Whether discrimination alleged by appellants is such that it violates appellants' constitutional rights is a question that cannot be answered at this stage of the proceedings. If, after a hearing, appellants can establish that the Philadelphia School District is the only district where those directly charged with administration of the educational program are not those given the authority to raise the necessary funds, and if it can be established that that distinction prejudices Philadelphia school children's education in violation of the constitution, some relief may be appropriate. It would be premature at this time to consider what that relief might be.

The order of the Commonwealth Court, affirming the trial court's dismissal of appellants' complaint, should be vacated, and the matter should be remanded for further proceedings.

NIX, J., joins in this dissenting opinion.