566 A.2d 352

SCHOOL DISTRICT OF PHILADELPHIA, BOARD OF
EDUCATION and Constance E. Clayton,
Superintendent of Schools, Appellants,

v.

COUNCIL OF the CITY OF PHILADELPHIA and Valerie
Gibson et al., Appellees.

Commonwealth Court of Pennsylvania.

Argued June 7, 1989.

Decided Nov. 15, 1989.

Reargument Denied Jan. 26, 1990.

Barbara W. Mather, with her, David Castro, Pepper, Hamilton & Scheetz, Philadelphia, for appellants.

Stephen P. Gallagher, Stack & Gallagher, P.C., Philadelphia, for appellee, Council of the City of Philadelphia.

Joseph O'Donnell, Philadelphia, for appellees, Valerie Gibson et al.

Before CRUMLISH, Jr., President Judge, and DOYLE, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ., concur.

## OPINION

CRUMLISH, Jr., President Judge.

The School District of Philadelphia (District), Board of Education (Board), and Constance E. Clayton, Superintendent of Schools, appeal a Philadelphia County Common Pleas Court interlocutory order granting Valerie Gibson, Phyllis Ruffin and the Philadelphia City Council's (Council) motion for peremptory judgment in mandamus.[1] We affirm.

In March of 1988, the District submitted to the Council its preliminary "lump sum" statement,[2] which included the

---

1. Gibson and Ruffin, taxpayers and parents of children enrolled in day-care centers scheduled to be closed, and Council filed separate actions, which on motion of the defendants District and Board, were consolidated in the Common Pleas Court.

   The District petitioned for amendment and certification for appeal of this interlocutory order under the procedure set forth in Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b). By Order of October 12, 1988, at No. 5042 July Term 1988, the District's petition was granted.

2. Under the Philadelphia Home Rule Charter, 351 Pa.Code § 12.12–303(b), the Board must adopt and submit to the Mayor and Council a lump sum statement of anticipated revenue, current subsidies, current taxes and projected expenditures for the following fiscal year. It has no independent taxing authority but must request authority to levy taxes to balance its budget for the year.

District's current allocation for child day-care programs. The District, subsequently faced with a projected cumulative five-year deficit of approximately $574 million, requested in its operating budget a tax package to fund this deficit. Council passed a tax authorization ordinance (Ordinance 90), requiring that all revenues raised as a result of the authorized tax rate increase be "utilized solely for the purpose of maintaining and increasing services to children, and for no other purpose."

After the enactment of Ordinance 90, the Board adopted a budget which revealed a current surplus of $31,771,500 for Fiscal Year 1989 (FY 1989) as of June 30, 1989. This surplus, if applied to the *next* fiscal year's operating budget, would leave the District with an anticipated $30 million deficit for that year and satisfied only twenty percent of its projected five-year deficit. Hence, on July 7, 1988, the Board announced that it would close six of its operating day-care centers as part of a series of reductions aimed at alleviating its long-term fiscal crisis. The Board made no claim that the day-care center closings were due to a current budget shortfall.

The Council and Valerie Gibson brought suit in Philadelphia County Common Pleas Court seeking a peremptory judgment in mandamus to compel the Board to maintain and continue to fund all child-care programs through the current fiscal year, FY 1989. The trial court granted mandamus, concluding that day-care center operation is a District-rendered custodial function and the maintenance of such programs is a proper exercise of the City's police power under the Home Rule Charter (Charter).[3] The Court required the District to continue to operate the six day-care centers through FY 1989 because the budget submitted to the Council contained a provision for the funding of these services and a request for their subsidy. It found as a fact that, at budget hearings, District officials represented to Council members that no curtailment of day-care centers

3. Opinion of the Philadelphia County Common Pleas Court, dated August 29, 1988, at No. 5042 July Term, 1988.

would occur if FY 1989 were fully funded. The Court concluded that the District could not create a surplus to limit the impact of a future deficit.

The District contends that it is exclusively vested with the authority to control the funding of child-care programs because those programs fall within its discretionary function.[4] It argues that because the Charter contains no provision prohibiting revenues from *exceeding* expenditures, it may lawfully generate a surplus over and above that created by Ordinance 90 by using funds originally earmarked for child-care services.

The Council counters that the District cannot unilaterally discontinue child care because the Charter proscribes the budgeting of a surplus to limit a future deficit. It argues that Ordinance 90 was intended to generate funds for maintaining and increasing services to children. Thus, the maintenance of day-care centers is subject to Council's prerogative and does not encroach on the Board's discretionary powers.

Hence, the issue we must address is whether the Board, in its discretion, may create a surplus to offset anticipated outyear deficits by eliminating currently operating programs and diverting monies earmarked to fund those programs. For the reasons which follow, we hold that it cannot.

We first note that our scope of review of an action in mandamus is to determine whether the trial court has abused its discretion or committed an error of law. *Township of Nether Providence Appeal*, 85 Pa.Commonwealth Ct. 104, 481 A.2d 692 (1984). Mandamus lies to compel the

4. The District also contends that Council lacked standing because it had no direct stake in the outcome of this litigation and Gibson and Ruffin are not entitled to relief because they did not amend their complaint to seek mandamus. However, as parents of children who would no longer be able to attend District day-care centers, we find that Gibson and Ruffin have established the requisite standing under *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), and as the trial court noted, the complaints were consolidated *for all purposes, on motions of defendants.* The consolidated complaints were amended to include a count in mandamus.

performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy. *Philadelphia Presbytery Homes, Inc. v. Abington Township Board of Commissioners,* 440 Pa. 299, 269 A.2d 871 (1970). Mandamus does not lie to compel the performance of discretionary acts except where the exercise or nonexercise of discretion is arbitrary, fraudulent or based upon a mistaken view of the law. *Commonwealth v. Caplan,* 411 Pa. 563, 192 A.2d 894 (1963).

The Charter grants the Board general authority to manage and operate the District. 351 Pa.Code § 12.12–200. The Board is required under Charter Section 12.12–303 to adopt and submit to Council an operating budget of proposed expenditures by category of expense and administrative unit and of estimated receipts during the coming fiscal year. The "proposed expenditures shall not exceed the amount of funds available...." 351 Pa.Code § 12.12–303(a). This provision requires the Board to operate within a balanced budget. *Odgers v. Unemployment Compensation Board of Review,* 514 Pa. 378, 525 A.2d 359 (1987).

Because it is not an elected body, the Board may not independently raise revenues and is wholly dependent on the city, state and federal governments for funding. *Id.* As a consequence, the Board is required to seek from Council the "authority to levy taxes *to balance its budget for the year."* 351 Pa.Code § 12.12–303(b) (emphasis added). Only then may the Board levy taxes "annually" and "within such limits ... as the General Assembly of the Commonwealth or ... Council ... *may from time to time prescribe,* in amounts sufficient to provide funds for the *current* operation of the schools of the District...." 351 Pa.Code § 12.12–305 (emphasis added). Within these strictures, the Board may, if necessary, transfer *unencumbered* balances from one appropriation to another, 351 Pa.Code § 12.12–303(d), or make additional appropriations to meet unanticipated emergencies from *unexpended* balances in

existing appropriations, unappropriated revenues or temporary loans. 351 Pa.Code § 12.12–303(e).

First, the Charter mandates in no uncertain terms a balanced budget, 351 Pa.Code § 12.12–303(a). *Odgers.* Section 303(b) of the Education Supplement to the Charter compels the Board to seek taxing authority "to balance its budget *for the year."* (Emphasis added.) Under Section 305, the Board is required to levy taxes sufficient to provide funds for the District's *current* operation. It is also required to adopt a discrete fiscal year and adopt its calendar accordingly. Additionally, Section 302 of the Charter prohibits changing the fiscal year without public notice and hearing. We conclude from these Charter provisions that the Board may not create a surplus by cutting current operations in anticipation of deficits in the out-years.

Had the Charter intended the Board to enjoy such broad discretion, after submission of an operating budget, it would have expressly provided. Instead, the Charter strictly limits the instances where the Board may manipulate the budget by transferring unencumbered balances, 351 Pa. Code § 12.12–303(d), or by using unexpended balances in existing appropriations to meet unanticipated emergencies. 351 Pa.Code § 12.12–303(c).

In this case, the elimination of existing day-care centers to create a surplus was not the transfer of an unencumbered balance from one appropriation to another. Nor does the Board argue that unexpended day-care center funds were intended to meet an *unanticipated emergency.* While we appreciate the magnitude of the impending long-range deficit the District faces, the record discloses that in its tax levy request, the Board advised Council of this anticipated shortfall and sought funds to cover it. (Notes of Testimony, 8/17/88, pp. 81–84). It can hardly be said that the projected budget deficit was an unforeseen circumstance or unanticipated emergency.

We find it laudable that the Board should attempt to resolve the long-range financial problems it perceives. Nonetheless, the *Odgers* mandate of a balanced budget, the

Charter's repeated references to current operations, and the proviso requiring adherence to a discrete fiscal year lead inescapably to the conclusion that the Board's attempt to create a current, unbudgeted surplus to be applied to out-year deficits is improper.

Moreover, Ordinance 90, by its express terms, further limits the Board's action so that "[a]ll revenues raised by the School District as a result of the increased rate of tax authorized in this Ordinance shall be utilized solely for the purpose of maintaining and increasing services to children." Hence, the ordinance itself contains a limitation such as "Council of the City may from time to time prescribe...." 351 Pa.Code § 12.12–305. The Board protests that there is no evidence to establish that the created surplus would be used for purposes other than child-care services. However, we cannot see how *cutting operations* and closing down six day-care centers complies with Ordinance 90's mandate to *maintain* or *increase* services to children.

The Board also points to authority which specifically holds that a school district may budget a surplus. *Thompson v. West Branch Area School District,* 95 Pa.Commonwealth Ct. 288, 505 A.2d 386 (1986); *Donnelly v. Borough of Media,* 23 Pa.Commonwealth Ct. 115, 351 A.2d 299 (1976). We find this case distinguishable from those authorities. In those instances, decided under the Local Tax Enabling Act not applicable to the School District of Philadelphia, the cash surplus was part of an approved budget and accounted for as a separate item.

Here, the District's additional surplus was not budgeted but rather was created from funds originally appropriated for child care.

The Philadelphia School Board is unique in Pennsylvania. While the boards of other classes of school districts must be elected, the Charter authorizes *appointment* of Philadelphia's Board. Because the General Assembly may delegate its taxing power only to elected officials, the Board does not have power to levy local taxes. *Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979). Not only does this rule of law

distinguish this case from other authorities upholding the budgeting of a surplus, it lends credence to the conclusion that the Board is without discretion to increase a surplus by eliminating existing operating programs for which funds have been appropriated.

This principle has the salutary effect, consistent with our Constitution's limitations on the power to delegate legislative taxing powers, of preventing the Board, which is unanswerable to the electorate, from adopting a sham budget, levying taxes and spending the money elsewhere (or not at all) in the name of its discretion without public notice or submission to the other review processes required by the Charter.

It is indisputable that the ultimate decision of whether particular goals, policies and programs are worthy of tax dollar expenditure, rests exclusively with elected officials (here City Council) who must answer to the taxpaying public. While we acknowledge the Board's discretion to establish and administer school programs, 24 Pa. S.A. § 5–502, it may not, under the guise of exercising discretion, *unilaterally* spend tax dollars, or perhaps more significantly, decide *not* to expend tax dollars in some goals or programs so that it could apply them elsewhere, to initiate and/or further such goals and programs as it alone deems desirable.

Charter Section 303 obligates the Board to submit a yearly preliminary and operating budget. It also spells out the strict limitations and circumstances when the Board may deviate from its operating budget. We find none of those circumstances present here.

Accordingly, we hold that the Common Pleas Court committed no abuse of discretion or error of law in concluding that the District was under a legal duty to continue operating its existing day-care services. The grant of peremptory mandamus is affirmed.

PALLADINO, J., concurs in the result only.

## ORDER

The Philadelphia County Common Pleas Court order, No. 5042 July Term, 1988, dated August 17, 1988, is affirmed.